ORIN M. TALBOT *vs.* CITY OF TAUNTON.

Bristol.    Oct. 27, 1885. — Jan. 11, 1886.    FIELD & C. ALLEN, JJ., absent.

A question not raised in the court below is not open upon a bill of exceptions.

In an action against a city for injuries caused to the plaintiff's omnibus by a defect in a way, which was crossed by a railroad bridge, the driver of the omnibus, who was in the plaintiff's employ, testified that the accident, which occurred in the evening, was caused by the top of the omnibus, which was of the usual size and height, striking or being caught against the bridge as he drove under it; that the night was quite dark, but not so dark that he could not see the bridge as he approached it; that he had never been on this way with an omnibus before, but had driven ordinary carriages through it, and had never noticed that the bridge was too low; that an ordinary carriage went through all right; that the omnibus was loaded with passengers, with some of whom he was talking; that he paid no attention to the bridge; and that he was driving in the middle of the travelled way at the rate of six miles an hour.  *Held*, that the question whether the driver was in the exercise of due care was for the jury.

In an action against a city for injuries caused to a vehicle by a defect in a way, which was crossed by a railroad bridge, it appeared that, upon the petition of the railroad corporation, the county commissioners ordered that the way, which was then a private way, should be passed by the railroad by a bridge, without any change in the grade of the way, and that the bridge should "be made eleven feet in the clear above the grade of said road;" that, when the way was laid out and accepted by the city, five years later, no change of grade was provided for; and that, at the time of the accident, the surface of the way was eight feet eight and one half inches below the bridge.  The superintendent of streets of the city testified that the grade of the way could be lowered a foot, and the water disposed of by a drain to the river.  *Held*, that it could not be ruled, as matter of law, that the height of the bridge over the surface of the way did not make the way defective; and that the judge was not required to rule that the city could not have removed the defect by the use of ordinary care.

TORT for an injury caused to the plaintiff's omnibus by a defect in a highway in the defendant city.   Trial in the Superior Court, before *Staples*, J., who allowed a bill of exceptions, in substance as follows:

John P. Dary testified, for the plaintiff, that, on February 1, 1884, at about half-past seven o'clock in the evening, the night being quite dark, he was in the plaintiff's employ, and driving the plaintiff's omnibus, drawn by two horses and loaded with passengers, from Taunton to Dighton; that, as he was driving in the middle of the travelled way on Fourth Street in Taunton, he came to the railroad bridge over said street; that, as he drove under the bridge, the top of the omnibus struck or caught against the bridge, and the omnibus was injured; that

the omnibus was of the usual size and height; that he did not go through Fourth Street on his regular route, but that there were passengers on that street to be taken up; and that he had never been on said street with an omnibus before. On cross-examination, the witness stated that he had been through Fourth Street before perhaps a dozen times; that he had driven ordinary carriages through it, and had never noticed that the bridge was too low; that an ordinary carriage went through all right; that he was driving at the rate of six miles an hour, and had driven the omnibus three or four months; that he paid no attention to the bridge, and was talking with passengers on the seat with him; and that it was not so dark but that he could see the bridge as he approached it.

It appeared that Fourth Street was a public highway, which the city was bound to keep in repair; that there was no notice of danger posted up there; and that the omnibus failed to clear the bridge by less than six inches.

J. L. Macomber, Jr., testified that he was superintendent of streets of the defendant city; that the grade of the street under the bridge could have been lowered a foot, and the water provided for by a drain to the river; that the road-bed under the bridge was the lowest part of the street within fifty rods of the bridge; that there were dwellings abutting on the street; and that it was generally considered a dangerous place.

It further appeared that Fourth Street, prior to December 14, 1870, was a private way, having the same name; that the county commissioners, on December 28, 1865, upon the petition of the Dighton and Somerset Railroad Company, now the Old Colony Railroad Company, after due proceedings had, ordered and decreed that said Fourth Street "shall be passed by said railroad by a bridge over said road, without any change in the grade of said road, said bridge shall be made eleven feet in the clear above the grade of said road, the abutments shall be of stone, and shall be placed, the northerly abutment outside the limits of said road, the southerly abutment five feet within the limits of said road." It appeared that the bridge referred to in the evidence is the same authorized to be built by said decree.

It also appeared that Fourth Street was laid out and accepted as a public highway by the city council of Taunton on December

14, 1870 ; that the same was laid out thirty-five feet wide, and in the laying out no change of grade from what it was as a private way was provided for; that the laying out excepted " the land within the above lines covered by the abutments of the Old Colony Railroad Company's bridge; " and that, between 1865 and 1870, the Old Colony Railroad Company had succeeded to all the rights and liabilities of the Dighton and Somerset Railroad Company.

William Merrill testified, for the defendant, that he lived near Fourth Street, and that the grade in the centre of the street under the bridge was higher now by about one foot than sixteen years ago. He thought gravel had been drawn on there. Two other witnesses testified to the same effect.

It further appeared that, at the time of the accident, the measure from the surface of the street to the bridge above was eight feet eight and one half inches.

The defendant asked the judge to rule, that, upon the foregoing evidence, the plaintiff could not recover. The judge declined so to rule, and ruled that if the city, since the laying out of the street, on December 14, 1870, had raised the grade thereof under the bridge, so that the way at that point, in view of the height of the bridge above, became dangerous and unsafe to travellers lawfully travelling thereon and using due care, this would be a defect or want of repair, within the meaning of the statute; and that, if the same might have been remedied, and the damage and injury might have been prevented by reasonable care and diligence on the part of the city, and the injury in question occurred through such defect or want of repair, the plaintiff using due care, and the city had reasonable notice of the defect or want of repair, or might have had notice thereof by the exercise of proper care and diligence on its part, the city was liable. The judge gave other appropriate instructions, not excepted to.

The jury returned a verdict for the plaintiff ; and the defendant alleged exceptions.

*F. V. Fuller*, for the defendant.

*L. E. White*, for the plaintiff.

GARDNER, J. The case finds that Fourth Street, within the limits of which the injury to the plaintiff's omnibus happened, was a public highway, which the defendant was bound to keep

in repair; and that the same was laid out and accepted as a public highway by the city council of Taunton, on December 14, 1870. After the evidence was closed, the defendant asked the court to rule that, upon the evidence, the plaintiff could not recover. It is now contended that the street was not legally laid out; that, under the statutes then in force (Gen. Sts. *c.* 63, § 59), the mayor and aldermen, before laying out a way across a railroad, should apply to the county commissioners for permission to do so; and that, after certain proceedings by the commissioners, they might authorize the mayor and aldermen to lay out the way. Inasmuch as it appears from the bill of exceptions that Fourth Street was a public highway, which the city was bound to keep in repair, and as the point now raised was not brought to the attention of the court at the trial, it is too late to raise the question here. In addition, as this street was laid out and accepted by the city, in the absence of evidence to the contrary, we are to presume that the city council did all required by the statutes properly to lay out the highway.

The defendant contends, upon the evidence, that the plaintiff has failed to show that, at the time of the injury, he was in the exercise of due care. We think that the court could not determine this question as matter of law; and that it was properly left to the jury. The facts that the driver had never before been upon this street with the omnibus; that the night was quite dark, although not so dark but that he could see the bridge as he approached it; that the omnibus was loaded with passengers, with some of whom he was talking; that he paid no attention to the bridge; that he was driving in the middle of the travelled way at the rate of six miles an hour; that, although he had driven ordinary carriages under the bridge, he had never noticed that it was too low; and that an ordinary carriage went through all right, — together with the other evidence bearing upon this question of his due care, — were facts and circumstances to be weighed by the jury, in determining whether the driver did, in fact, use proper care in driving under the bridge, or whether, in so doing, he was reckless and careless. *Mayo* v. *Boston & Maine Railroad*, 104 Mass. 137.

It is urged by the defendant, that the evidence brings the case at bar within that of *Gilman* v. *Deerfield*, 15 Gray, 577. But

there is a marked distinction between them. In the latter case the plaintiff knew of the defect; he had driven over it before carefully and slowly, because he did not consider it safe; the defect was plainly visible as he approached it, driving a quick and high-spirited horse; and, as he approached the defect, he did not think of it, as his mind was wholly absorbed in thought concerning his professional business. In the case at bar, the driver had driven over the road, but had no knowledge of any defect therein. He was driving apparently at a proper gait, and with safe horses. The knowledge of the defect and of its danger, and the driving into the defect without thinking of it, mark the difference between the two cases.

The defendant also contends that it is not liable for the defect; " and that it is not such a defect that the defendant could have removed it by the use of ordinary care." In 1865, upon the petition of the railroad corporation, the county commissioners decreed that said Fourth Street should be passed by the railroad by a bridge, without any change in the grade of the street; and that the bridge " be made eleven feet in the clear above the grade of said road." In 1870, when the street was laid out, and accepted as a highway by the city, no change of grade was provided for. At the time of the injury, the surface of the street was eight feet eight and one half inches below the bridge. There was testimony from the superintendent of streets of the city, that the grade of the street under the bridge could be lowered a foot, and the water disposed of by a drain to the river.

Upon this evidence, the court could not have ruled, as matter of law, that the height of the bridge over the surface of the way did not make the way defective. If the railroad bridge alone constituted the defect, the city was not liable. The city was responsible, if the grade of the street under the bridge was raised, (and the city had notice of it,) so that passengers could not pass under it safely and conveniently. The raising of the surface of the street, thereby rendering the way defective or out of repair, in view of the height of the bridge over it, would constitute a defect under the statutes. Pub. Sts. c. 52, §§ 1, 18. In such case, the bridge is not the defect, but the way itself becomes defective and out of repair, because, its grade being

raised, its surface is brought so near the bridge as to render travel in the street unsafe, inconvenient, and dangerous.

In view of the testimony of the superintendent of streets, the court was not required to rule that the defendant city could not have removed the defect by the use of ordinary care. The court rightly declined to rule as requested. No exception was taken to the instructions given to the jury.

*Exceptions overruled.*