MARY A. DEWALD, *as Administratrix of the estate of Edward Dewald, deceased,* v. THE KANSAS CITY, FORT SCOTT & GULF RAILROAD COMPANY.

1. NEGLIGENCE — *Question for Jury — for Court.* Where the facts are disputed, negligence is a question of fact for the jury; but where the facts are undisputed, and only one inference or deduction is to be drawn from them, it presents a question of law for the courts.

2. EVIDENCE — *Demurrer, When Sustained.* Where an action is brought under the statute to recover damages for the benefit of the next of kin of the deceased, and the plaintiff's testimony shows that the negligence of the deceased contributed directly to the injuries resulting in the death of the deceased, the plaintiff has failed to make out a *prima facie* right of recovery, and a demurrer interposed to the evidence should be sustained.

3. ORDINARY CARE, *May be Inferred, When.* A jury may infer ordinary care and diligence on the part of an injured person, from the love of life, or the instinct of self-preservation, and the known disposition of men to avoid injury, but this presumption is overthrown when there is direct proof to the contrary.

4. PASSENGER — *Death — Contributory Negligence.* Where a passenger, without looking or listening for approaching trains, leaves his train voluntarily before it is stopped at its station, and before it is time for the train to stop, and the train is running at the rate of six miles an hour when he gets off, and he is then run against by a tender and engine, following his train on a parallel track, and receives injuries resulting in his death, the passenger contributes directly to the injuries causing his death.

*Error from Wyandotte District Court.*

THE case is stated in the opinion. Judgment for the defendant *Company,* at the March term, 1888. The plaintiff brings this case to this court.

*Sherry & Hughes,* for plaintiff in error.

*C. W. Blair,* and *Hagerman & Dana,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought by Mary A. Dewald, as administratrix of the estate of Edward Dewald, deceased, against the Kansas City, Fort Scott & Gulf Railroad Company, to recover damages alleged to have resulted from the negligence of the defendant in wrongfully causing the death of the deceased. The action was brought under the statute, to recover damages for the benefit of the next of kin. The petition alleged as negligence, that the plaintiff's intestate was a passenger for hire, whom the defendant had for such hire agreed to carry from Kansas City to Rosedale; that the car in which plaintiff's intestate rode was stopped at a point in Rosedale for the purpose of letting its passengers alight therefrom; that while alighting the deceased was run against and killed by an engine which had been cut from the car and was following the car on a parallel track. The case came on for trial before the court with a jury. After all the evidence was introduced on the part of the plaintiff, the railroad company interposed a demurrer on the ground that no cause of action had been proved. The demurrer was sustained by the court, and judgment rendered in favor of the company and against the plaintiff for costs; to which ruling and judgment the plaintiff excepted, and filed a motion for a new trial, which motion was overruled; to which ruling of the court the plaintiff also excepted, and brings the case to this court for review.

The evidence offered by the plaintiff tended to show that

the railroad company ran an accommodation train between Kansas City and Rosedale. This train consisted of an engine, tender, and coach. Kansas City is north of Rosedale. At Rosedale there was a depot, located in the southern part of the town, called "Depot Rosedale." When the train came from Kansas City in the evening it would be heading to the south, drawing the tender and coach after it. It would proceed on its journey till it reached the depot, then designated on the plat as "Depot Rosedale," which was as far south as that train went. It was customary for people residing at Rosedale in the vicinity of the "coal-shed," instead of leaving the train when it reached the south depot, to remain on the coach until it was taken back and set out on the side-track near that shed, when they would leave the train, and go to their homes. In this way they would save themselves some distance in walking. For doing so they paid no fare. On the train returning to Kansas City the engine and tender would be transferred to the north end of the coach, and then would back to Kansas City, drawing the coach after it, so that in making the return trip the tender would come first, the engine next, and then the coach. The through passenger train passed a little before the time this accommodation left for Kansas City, and it became necessary to place the latter on the side-track, so that the main track would be open for the passage of the through train. There being no turntable at Rosedale, the work of putting the engine and tender on the north end of the coach, and at the same time placing the train on the side-track, so as to leave the main track open, was done thus: The engine, after disposing of the business at Rosedale, would back the train from the depot toward the north till it reached the vicinity of the opening of a side-track. Here there was a down-grade toward the north. The engine and tender would be uncoupled from the coach, and the latter pushed or "kicked" ahead. The switch being thrown, the coach would pass upon and down the side-track, and after the coach reached the side-track the switch was turned back and the engine would back toward the north on the

main track; the coach would be stopped near the north end of the track, at about the "coal shed"; the engine would back north on the main track, and when it had passed the switch at the north end of the side-track near the "cattle-guard," that switch would be opened, and the engine would then go in on the side-track and be coupled to the coach, which would be found standing as stated, near the "coal shed." Here the train would stand till the through train passed, and then it would move toward the north to and on the main track to Kansas City.

The evidence offered by the plaintiff tended to show further, that on the evening of April 7, 1886, Edward Dewald, the deceased, returning from Kansas City upon the accommodation train to Rosedale, did not leave the train when it reached the Rosedale depot, but remained in the car as it was being taken back to be set out on the side-track. In this way he undoubtedly expected to save himself some distance in reaching his home. While the car was in motion, going about six miles an hour, he went to the south end of it and got off from its west side upon the main track. The car from which he stepped off was about fifteen car-lengths from the place where it usually stopped on the side-track. In getting off the car he was struck by the tender moving northward, and received injuries resulting in his death. Upon this state of facts, established by the evidence offered on the part of the plaintiff, the trial court committed no error in sustaining the demurrer to the evidence, which was interposed by the railroad company. Where the facts are disputed, negligence is a question of fact for the jury; but where the facts are undisputed, and only one deduction is to be drawn from them, it presents a question of law for the courts. (*K. P. Rly. Co. v. Butts*, 7 Kas. 308; *K. P. Rly. Co. v. Pointer*, 14 id. 37.) In this case the facts are undisputed. The negligence alleged in the petition was not proved. The car had not stopped when Dewald stepped off, and when he stepped off it was not at the Rosedale depot, nor at the place at the north end of the side-track where it was

1. Negligence—
question for
jury—for
court.

usual for the car to stop when taken back from the depot and set out on the side-track.

There is no evidence tending to show that the railroad company, or any of its agents, purposely or wantonly injured the deceased. As the car had not stopped when the deceased got off, no negligence can be imputed against the railroad company, or its agents, in running the engine and tender on the track parallel with the one the passenger car was on, as to the persons in that car, because it could not have been anticipated that any person in the car would be so careless or reckless as to jump off while it was moving quite rapidly, and before it reached its usual stopping-place. Again, it appears from the evidence that but for the deceased's own negligence he would not have been injured. He left the car when it was moving quite rapidly, and could not have listened or looked for the approaching engine.

Under such circumstances as are disclosed in this case, a passenger cannot voluntarily jump from a moving car, thereby placing his life and limbs in peril, and then claim to be free from fault. (*Parsons v. N. Y. C. Rld. Co.*, 37 Hun, 128; *Commonwealth v. B. & M. Rld. Co.*, 129 Mass. 500; *Weber v. K. C. C. Rly. Co.*, 100 Mo. 194; *Burrows v. Erie Rld. Co.*, 63 N.Y. 556; 2 Shearman & R., Neg., 4th ed., note, p. 359; *Reibel v. C. I. St. L. & C. R. Rld. Co.*, 17 N. E. Rep. 107; Beach, Contrib. Neg., 156, § 52; Patt. Rly. Acc. Law, §§ 22, 24, 259; 2 Shearman & R., Neg., 4th ed., § 525; *U. P. Rly. Co. v. Adams*, 33 Kas. 427; *Clark v. Mo. Pac. Rly. Co.*, 35 id. 350; *A. T. & S. F. Rld. Co. v. Townsend*, 39 id. 115.)

If the deceased had been directed by the conductor, or any person in charge of the train, to jump off, or if the car had not stopped at the regular station for passengers to alight, many of the questions argued in the briefs would be before us for consideration; but upon the facts presented, many of the authorities cited by plaintiff are not applicable. It is urged, however, that the case ought not to have been taken from the jury, because the presumption is that the deceased at the time he was injured was in the exercise of due care. It

is true that a jury may infer ordinary care and diligence on the part of an injured person from the love of

3. Ordinary care, may be inferred, when.

life, or the instinct of self-preservation, and the known disposition of men to avoid injury. But in this case, the presumption that the deceased was in the exercise of due care is overcome by proof to the contrary; and this appears without any conflict of evidence, from the plaintiff's own case.

Where an action is brought to recover for personal injuries, and the plaintiff's testimony shows that his own negligence contributed directly to the injury, he has failed

2. Evidence—demurrer, when sustained.

to make out a *prima facie* right of recovery, and a demurrer interposed to this evidence should be sustained. (*Gibson v. City of Wyandotte*, 20 Kas. 158; *Williams v. Railroad Co.*, 22 id. 117; *Artman v. Railroad Co.*, 22 id. 296.)

A failure to listen or look, when by taking this precaution the injury might have been avoided, is negligence that will

4. Passenger—dea-h—contributory negligence.

bar a recovery, notwithstanding the negligence of the railroad company in failing to give signals contributed to the injury. (*Railroad Co. v. Rice*, 10 Kas. 426; *Railroad Co. v. Pointer*, 14 id. 37; *Mason v. Railroad Co.*, 27 id. 83; *Corlett v. City of Leavenworth*, 27 id. 673; *Maultby v. City of Leavenworth*, 28 id. 748; *Clark v. Railroad Co.*, 35 id. 353; *Railroad Co. v. Davis*, 37 id. 748; *U. P. Rly. Co. v. Adams*, 33 id. 427.)

Upon the oral argument it was insisted by counsel for the plaintiff that the evidence was conflicting as to whether the train was moving or not when the deceased jumped off, and therefore the trial court erred in not submitting it to the jury. We have carefully examined the record, but do not so understand the evidence introduced. Two witnesses only were called to prove the alleged negligence of the railroad company. One of these, J. L. Worthy, testified that "the deceased stepped off of the hind end of the coach at the west side just as the engine was coming along, and it struck him and gave him his injuries from which he died."

"Q. State whether or not the car you were on was moving at the time you were getting off? A. I don't think it was, but I could not positively state.

"Q. You don't think it was? A. No, sir; I don't think it was moving; I think the car was standing still, although I would not be positive about that.

"Q. Which side did you get off on? A. I got off on the west side.

"Q. The same side as Dewald? A. Yes, sir.

"Q. Did you get off before or after this man? A. After.

"Q. You said that you could not tell whether this coach was in motion at the time this man got off? A. No, sir.

"Q. You did not know about that? A. No, sir."

This witness did not testify or intend to testify that the car was stopped at the time that the deceased stepped off. The other witness, H. D. Trickey, testified:

"Q. Were you near him [Dewald] at the time he sustained the injuries of which he died? A. Yes, sir.

"Q. Did you see him on that day? A. I saw him on the train.

"Q. Did you see Mr. Dewald the evening when he got off the car? A. I did not see him when he got off.

"Q. Where were you — on the car, when you saw him? A. No, sir.

"Q. I will ask you if you saw him struck by the engine? A. No, sir; I did not.

"Q. Where was he when you first saw him off the car? A. He was lying on his face, with his head nearly between two ties, close to the rail; quite close — six inches or thereabouts.

"Q. There wasn't any road-crossing where he was picked up? A. No.

"Q. How far was it from where he was picked up to where the coach usually stood when the engine was hooked onto it in reversing? A. It must be something in the vicinity of perhaps half-way on the switch.

"Q. Half way from the north switch? A. I couldn't say exactly, but somewheres in the vicinity of half-way — perhaps a little further north.

"Q. What I mean is, how far was it from where he was picked up down to where the coach usually stood when it was hitched onto the engine? A. It might be fifteen car-lengths.

"Q. Then the coach at that time, at the time he was picked

up, had not got down to the place where it usually stood?
A. No, sir.

"Q. You had not attempted to get off the coach yet? A.
Not quite when he had. I was getting off here in order to
get around the end of the rolling-mill.

"Q. Had he got down off of the car before you came out
on the platform? A. I couldn't say; I didn't notice him on
the platform at all.

"Q. Had the coach yet stopped before you got off? A.
No, it hadn't.

"Q. You got off when it was in motion? A. Yes, sir.

"Q. And how soon after you got off before you saw De-
wald lying there? A. I might have gone somewhere in the
vicinity of two rods before I saw him, because I was running
with the train.

"Q. You got off when it was in motion and was running
with it? A. Yes, sir.

"Q. You say you ran how far? A. Possibly it might have
been two rods. I heard some one holler there was a man
hurt.

"Q. How far back did you go to where Dewald was?
A. Well, I don't hardly think it was two rods, though it
might be.

"Q. You did not mean to say you were standing on the
rear platform and saw the engine coming towards you, to see
how fast it was coming? A. When I jumped off I saw the
engine, and the engine was ahead.

"Q. It was passing the coach there? A. Yes, sir, passing
the coach there; judging that I might be traveling at the rate
of the car—six miles an hour—and as soon as I struck the
ground I commenced to stop."

The unavoidable conclusion, from the evidence of Trickey,
is that he got off the train while it was in motion; that he
got off after, or about the time, Dewald jumped off; and that
when he, Trickey, got off, the car was going about six miles
an hour. It must have been going six miles an hour when
Dewald jumped off.

To have sustained the allegations in the petition, the evi-
dence must have shown that the car upon which the deceased
was riding had stopped when he jumped or got off; also,
that the car had stopped at a point in the city of Rosedale

38 — 44 KAS.

for the purpose of letting the passengers thereon alight; and, further, the evidence must have shown that the railroad company, or its agents, carelessly or negligently ran the tender or engine against the deceased. All of this was not established.

The judgment of the district court must be affirmed.

All the Justices concurring.