THE CITY OF FORT SCOTT AND THE KANSAS CITY,
FORT SCOTT & MEMPHIS RAILROAD COMPANY v. C.
G. PECK, *Administrator of the Estate of D. O. Peck,
deceased.*

### No. 171.

1. PRACTICE—*no plea in abatement filed, objection that cause
pending in Supreme Court not considered.* Where an oral
objection was made to proceeding with the trial of this action for
the reason that the same was then pending in the Supreme Court
on defendant's appeal from the action of the district court of
Bourbon County—where the case was first tried—in granting
plaintiff a new trial, and no plea in abatement was filed and no
evidence offered in support of such objection, the same was prop-
erly overruled.

2. DEMURRER TO EVIDENCE—*evidence examined and, properly
overruled in this case.* Where, in an action for damages brought
by an administrator, plaintiff's intestate was killed by being
crushed between the timbers of a railroad trestle above a public
street, in a city of the first class, and the top of an omnibus on
which the deceased was riding while engaged in his business as
driver of the vehicle, on a bright moonlight night, and where the
evidence shows that the deceased was familiar with the streets in
question, and had frequently driven hacks and wagons under said
trestle, but fails to show that he had ever driven an omnibus

38—5 KAN. APP.

594    CITY OF FORT SCOTT v. PECK, *Adm'r.*

S. Dept.        Opinion.   Milton, J.      5 Kan. App.

thereunder, or that his attention was ever called by any one to the risk of so doing: *held*, that the demurrer to plaintiff's evidence on the ground that it proved such contributory negligence on the part of deceased as to prevent a recovery, was properly overruled.

3. EVIDENCE—*examined and held sufficient.* Where the evidence tended to prove that a railroad trestle which passed over a public street in a city of the first class, was always so low that it necessarily impaired the usefulness of the street and that the city permitted such trestle to be built and maintained, and where the evidence further tended to prove that the injury alleged in plaintiff's petition resulted from the insufficiency of the height of such trestle above the street: *held*, that the whole question of the responsibility of the railroad company and of the city, and of their negligence in respect to the trestle and street, was properly left to the jury, and that their verdict upon conflicting evidence having been approved by the trial court will not be disturbed by this court.

Error from Allen District Court. Hon. L. Stillwell, Judge. Opinion filed June 9, 1897. *Affirmed.*

*Wallace Pratt, Chas. W. Blair, W. C. Perry, W. P. Dillard*, and *J. H. Crider*, for plaintiffs in error.

*J. D. McCleverty*, and *J. S. West*, for defendant in error.

MILTON, J. This action was brought by C. G. Peck, as administrator of the estate of his son, D. O. Peck, deceased, under section 4518, General Statutes of 1889, against the City of Fort Scott and the Kansas City, Fort Scott & Memphis Railroad Company, jointly, to recover damages which said plaintiff alleged he had sustained by reason of the death of his son.

At about three o'clock A. M., on November 30, 1890, D. O. Peck was driving an omnibus going east on Third Street in Fort Scott, taking a passenger from the Missouri, Kansas & Texas Railroad depot. The vehicle was nine feet two inches in height. Over and

CITY OF FORT SCOTT v. PECK, *Adm'r.*    595

June 9, 1897.        Opinion.   Milton, J.              E. Div.

across Third Street, which extends east and west, was
a trestle bridge, built in 1870 or 1871, which formed
a part of the railroad of the litigant Company.   At
the point where the usual passage of wagons took
place this trestle bridge was nine feet and six inches
above the surface of the street on the west side, and
nine feet above on the east side.   The Railroad Com-
pany constructed a fill across this street in 1869, but
the next year, on demand of the City, cut an opening
through the embankment and put in this structure,
which we shall refer to as the trestle, and removed
the fill down to, or slightly below, the natural surface
of the ground and down to the grade line established
by the city engineer.   About fifteen feet east of this
trestle the Railroad Company dug a ditch for drain-
age purposes and covered it with a small wooden
bridge.   Some years after this bridge was built it was
raised from six to ten inches.   The trestle was several
times repaired by the Company, and there was evi-
dence to the effect that, in uncovering the timbers,
quantities of dirt were thrown into the street under
the trestle thus filling up and raising the street some-
what, under the trestle; and there was evidence to
show that on one or two occasions employees of the
City had scraped dirt from the surface of the street
under the trestle.   The land surface is such in the
vicinity of this trestle that drainage is not easy, and
the evidence is conflicting as to the possibility of low-
ering the street under the trestle, and at the same
time leaving it passable in wet weather.

Deceased was sitting in the driver's usual seat on
the top of the omnibus, when his body was caught
between the timbers of the trestle and the top of the
omnibus, crushing him so that he died in a very few
minutes after the injury was received.   No one saw

the accident. The passenger, Mr. Hubbart, a postal clerk, says the vehicle stopped, and he heard a crash on top of it; that he immediately got out and found the driver lying on top of the omnibus between the central portion of the roof, which is the highest part of the vehicle, and one of the side railings, between the two stringers of the trestle, with his face up and his feet near the driver's seat. He was struggling as if dying. In some way Mr. Hubbart got him to the ground; and, shortly afterwards other persons came, but the injured man died before he could be taken to his room. He was conscious after the injury, and in answer to a question by Mr. Hubbart as to whether he realized where he was, said that he did but was too sick to talk.

The night was bright and clear, the moon being almost at its full. Third Street, where he passed over it from Scott Avenue to the trestle, is a moderate decline for about four blocks, and there was nothing to obstruct a view of the trestle. The railroad at this point is the dividing line between Fort Scott proper and East Fort Scott, the business portion of the city being west of the railroad. Deceased had lived for years in East Fort Scott, and had passed under the trestle very many times. He had driven his own transfer wagon for a long time, and had worked for two years or more for the Terry Bus Company, at different times, being a driver of the baggage wagon mainly, but frequently driving a hack. During the month immediately preceding his death he frequently drove an omnibus. He had often driven a hack or baggage wagon under the trestle, but it does not appear that he had ever passed under there on an omnibus. It was proven that, in order to remove the omnibus on which he was crushed, it was necessary

CITY OF FORT SCOTT v. PECK, *Adm'r.*     597

June 9, 1897.          Opinion.   Milton, J.          E. Div.

to back it out; and that it had been drawn by the team very hard against the stringer on the east side of the trestle.   Several of the bus company employees testified that they were in the habit of "ducking" their heads when driving under the trestle on a hack, although there was no real necessity for so doing. There is nothing to show that the deceased ever did this.   Much testimony was received. to show that numerous accidents had happened at the trestle to drivers and loads.   Third Street was much traveled and its use was necessary for the convenience of a great number of people.   There were two other practicable routes from the depot to Hubbart's residence, but the one under the Third Street trestle was considered the best.   It was not shown that complaints were made at any time to the City or the Railroad Company in regard to this trestle.   Deceased was thirty-one years old and unmarried, but was engaged to be married. His father was fifty-seven years old and a widower, and was temporarily earning one dollar and fifty cents per day and expenses, while deceased was receiving forty-five dollars per month for his work.   His estate inventoried only thirty-six dollars.   He had given about two hundred dollars to his father in the three years preceding his death, and it had been arranged that after he should marry his father would live with him.

The defendant City alleged in its answer, that, if there was any injury to plaintiff's intestate, it was caused solely by the insufficient height of the trestle of the defendant Company, whose duty it was to place and maintain a suitable crossing at the intersection of its said road and the line of the street.   There was a large amount of testimony on this point which will be hereinafter noticed.   It was clear from the evidence

598    City of Fort Scott v. Peck, *Adm'r*.

S. Dept.          Opinion.   Milton, J.          5 Kan. App·

that both the City, in its corporate capacity, and the Railroad Company had knowledge of the condition of the trestle continuously from the time of its erection to the time of the casualty. The answer of the defendant Company, among other things, averred that, when the City sought to operate said street, it agreed with the Railroad Company that said City would assume all the liability and responsibility of the manner and mode of the construction of the trestle.

At the first trial in Bourbon County a demurrer to plaintiff's evidence was sustained, but it was afterwards set aside and a new trial ordered. Shortly thereafter Hon. J. S. West, one of the plaintiff's attorneys, having been elected judge of that district, the case was sent to Allen County for trial. Verdict and judgment were in favor of plaintiff and against both defendants for two thousand dollars, and the defendants bring these proceedings to reverse that judgment. Objection was made by the defendants to proceeding to trial in Allen County for the alleged reason that the same case was then pending in the Supreme Court upon proceedings brought by defendant to reverse the ruling of the court granting a new trial to plaintiff.

No plea in abatement was filed and no testimony of any kind was offered in support of this objection. It will not, therefore, be considered by this court. See Am. & Eng. Ency. of Law, vol. 8, p. 555, and cases there cited.

The principal questions presented are these : *First*, ought the trial court to have sustained the demurrer to plaintiff's evidence on account of contributory negligence of plaintiff's intestate ; *second*, was there liability on the part of the defendants or either of them because of negligence?

CITY OF FORT SCOTT v. PECK, *Adm'r.*     599

June 9, 1897.          Opinion.  Milton, J.          E. Div.

I. The able counsel for each of the plaintiffs in error have given the first question much attention in their briefs.   They say that the deceased had lived in Fort Scott for ten years, and had driven under the Third Street trestle very frequently, with wagon or cab, both by day and by night ; that there were two other routes on which it was safe to drive ; that the night was bright and there was nothing to obstruct his view for some time before he reached the trestle ; that the other employees of the omnibus company knew the trestle was low and were in the habit of ''ducking'' their heads in going under it even when driving hacks,—counsel, however, admit that there was no necessity for so doing ; and that the presumption is irresistible that the deceased was acquainted with the height of the trestle.   From these facts they conclude that deceased must have driven against the trestle without care or precaution ; and that they have made out a case where contributory negligence is so clearly shown that the trial court should have sustained the demurrer to the evidence of plaintiff.   In support of this claim a large number of cases are cited from which they quote copiously.

The case of *Finlayson v. Railroad Co.* ( 1 Dillon 579) is not applicable, as it appears that the injured party was strolling along a railroad track ''in a state of abstraction careless of what might happen,'' practically inviting harm.   In this case deceased was going where he had a right to go in the performance of his work.   Counsel have said that it was not necessary, though somewhat customary, for drivers of hacks to '' duck '' their heads when going under this trestle.   It follows then that it would not be negligent for a driver of such a vehicle to omit such action there ; and, since it is not shown that deceased actually knew that the

600    City of Fort Scott v. Peck, *Adm'r.*

S. Dept.            Opinion.    Milton, J.            5 Kan. App.

trestle was dangerously low, it could not be said as a matter of law that he was guilty of contributory negligence in not getting down from the seat in driving up to the trestle. The very fact that he had so often driven under it with perfect safety and convenience may have prevented close inquiry on his part as to the actual height of the structure. Besides this, it was not shown that he had ever before driven an omnibus under the trestle, or that he knew anything about the danger of so doing. Certainly the one he was driving could not have been driven through the passage way under it.

The case of *Dewald v. K. C. Ft. S. & G. Rld. Co.* ( 44 Kan. 586 ) differs materially from this case. In that case the intestate clearly contributed directly to his injury, for he alighted from a train while it was moving rapidly, before it reached its usual stopping place. In considering the claim of counsel that the case ought not to have been taken from the jury, Chief Justice Horton used this language :

" It is true that a jury may infer ordinary care and diligence on the part of an injured person from the love of life, or the instinct of self-preservation, and the known disposition of men to avoid injury. But in this case, the presumption that the deceased was in the exercise of due care is overcome by proof to the contrary ; and this appears without any conflict of evidence, from plaintiff's own case."

We observe that there is no evidence as to actual negligence on the part of the deceased in the case at bar.

It is strongly urged that the case of the *Gulf, Colorado & Santa Fe Railway Company v. Montgomery* ( 85 Tex. 64, 19 S. W. Rep. 1015 ) furnishes an adjudication by a court of final resort that facts such as exist in this case conclusively prove contributory neg-

ligence, and bar any right of recovery. The fourth division* of the syllabus reads :

"Plaintiff was injured by being caught between the timbers of the trestle and the load of wood on which he was riding, the ground being higher on the side opposite which he entered. *Held*, that, having passed under the trestle before, hauling wood, and being used to the way, he was guilty of contributory negligence in not foreseeing the danger."

The distinction is plain between the case cited and the one at bar. The trestle was not over a highway, and the court found that the company was not bound to provide a crossing at the point where the trestle was located. Whether or not it was intended for a passage was an issue in the case. The court found that the injured party was accustomed to pass under the trestle with loads of wood, and held that he thus knew from experience *in hauling similar loads* the danger from driving under the trestle with a load of wood.

It is claimed that the contributory negligence of the deceased was shown by his not choosing a safer way when such was open to him, and the case of *Cohn v. City of Kansas* ( 108 Mo. 387 ) is cited as supporting this contention. Part of the syllabus reads as follows :

"One who attempts to cross over a sidewalk as a part of a road known to him to be dangerous when the dangerous place could easily have been avoided as by passing around it or taking another side is wanting in due care, and the court may so declare as a matter of law."

It will be noticed that the fact of the knowledge of the dangerous character of the place is assumed. Besides, this is not in accordance with the doctrine of our Supreme Court. See *Langan v. City of Atchison,*

---

*This does not appear in the official report.—Reporter.

35 Kan. 318.    Other cases are cited but the same distinction appears in all of them.

We think this case is much like that of the *A. T. & S. F. Rld. Co. v. Rowan* (55 Kan. 270).   Rowan was killed by being struck by the timbers of a low bridge while he was on top of a furniture car, in the performance of his duties as brakeman.   We quote the following from the opinion in that case :

"It is contended that, as Rowan had frequently passed under this bridge and two others of the same height, he knew, or should have known, that the bridge was too low to permit him to stand upon the top of furniture cars while passing through or under the bridge.   It is insisted that but one inference can reasonably be drawn from the testimony, and therefore that the court could declare as a matter of law that no recovery can be had in the case.   We are of the opinion that the testimony was sufficient to send the case to the jury, and that it cannot be said that the findings of fact do not justify a recovery.   When the injury and the fault of the company had been proved, the burden of showing that Rowan had knowledge of the risk, or that he failed to exercise ordinary care in the matter, rested upon the company.   In the absence of evidence to the contrary, it will be presumed that Rowan was free from contributory negligence, as it is ' held that a jury may infer ordinary care and diligence on the part of an injured person from the love of life or the instinct of self-preservation and the known disposition of men to avoid injury.' *Dewald v. Railroad Co.*, 44 Kan. 591. .   .   .   While he had ridden over this section of the road for a year or more, no one has been produced to show that he had ever ridden upon one of the high cars, nor that his attention was ever called by any one to the risk of so doing."

The demurrer to plaintiff's evidence was properly overruled.

II.   As to the liability of the defendants below for

negligence in respect to the trestle.   Certainly that was a dangerous trestle and one that impaired the usefulness of the street at the time of the casualty.   Responsibility for its condition rests somewhere.   There was negligence on the part of one or both of the defendants below.   Both had a duty fixed by statute.

The City of Fort Scott owed to the public the duty of keeping the streets within its limits in a safe condition for use in the usual manner by travelers, and was liable in a civil action for injuries resulting from the neglect to perform this duty.   *Langan v. City of Atchison*, supra ; *Jansen v. City of Atchison*, 16 Kan. 358 ; *City of Salina v. Trosper*, 27 id. 544.

The Railroad Company had a duty also, under the fourth clause of paragraph 1207, General Statutes of 1889, which reads :

"*Fourth*, To construct its road across, along or upon any stream of water, water course, street, highway, plank road or turnpike, which the route of its road shall intersect or touch ; but the company shall restore the stream, water course, street, highway, plank road or turnpike thus intersected or touched, to its former state, or to such state as to have not necessarily impaired its usefulness," etc.

Counsel for the Railroad Company say that the Company might have either restored the street to its former state, or to have restored it to such a state as to not necessarily have impaired its usefulness ; and that it did both by taking out the embankment down to, or even below, the natural surface, and by putting the street into a usable state, fit for public use, by making a clear space of between twelve and thirteen feet between the surface of the street and the trestle, by raising the trestle and by digging below the surface of the street.   They say there can be no question that the space was twelve or thirteen feet in 1871,

604 CITY OF FORT SCOTT v. PECK, *Adm'r*.

S. Dept.        Opinion.   Milton, J.        5 Kan. App.

immediately after the street was opened there, as the only witnesses who testified as to the height of the bridge at that time so testified. Counsel for the City called attention to the fact that the petition in this case alleged that the negligence of defendants consisted in the fact that the Company had, with full knowledge and permission of the City, placed and maintained an obstruction over Third Street, the said obstruction being a bridge or trestle, which was elevated at such a height — only about nine feet above said street — as to obstruct the passage of many vehicles in common use, when attempting to pass along said street. They say that these allegations mean that the Railroad Company constructed a bridge only nine feet above the street and that the City has permitted it to remain at that height; that this is the only negligence charged, and that such allegations did not justify the admission of any testimony to prove that the space between the street and the trestle had been lessened by the street being since filled up from any cause. They cite the case of *Talbot v. Taunton* ( 140 Mass. 552, 5 N. E. Rep. 616 ), in which the Supreme Court of Massachusetts said :

" Where a railway is built over a highway which a city is bound to keep in repair, and the surface of the street is raised so that passengers cannot pass under it safely and conveniently, the city is liable for injuries caused by such defect in the highway, if the grade of the street was raised, and the city had notice of it. If the railway bridge alone constituted the defect, the city is not liable." *

We remark that the case before us was tried on the theory that the space may have been originally insufficient, and that it was lessened by the acts of the Railroad Company in putting dirt in the street, and

---

*This quotation does not appear in the official report.— REPORTER.

CITY OF FORT SCOTT v. PECK, *Adm'r.* 605

June 9, 1897.      Opinion.   Milton, J.      E. Div.

from other causes, and that the City was negligent in not preserving the proper space.

Very few objections to the introduction of evidence were made in this trial and we are not advised by counsel where the objectionable testimony is to be found. The testimony occupies over 250 pages of the record. The objections as to irrelevancy cannot be considered.

We are unable after careful and repeated examinations of the evidence to agree with counsel for the Railroad Company as to the original height of the trestle above the street.

Two or three years after the trestle was put in, the track was raised there, possibly one foot; but it is not shown that the bents of the trestle were lengthened, as the blocking was done on top of the bents. This had the effect to lift the stringers higher above the street.

When the Company's employees rebuilt the little bridge just east of the trestle, some years after it was first laid, they raised it and the grade of the street there six inches or more. The net gain in the height of the passageway under the trestle from the two operations was not to exceed six inches.

The testimony of James Nulty upon which the Railroad Company relies as to the original height of the trestle, shows that at the time it was first put in he was doing street grading near the trestle for the city, and that he estimated the height of the trestle at twelve feet, but did not measure it. He stated that he thought the street had filled up from eighteen inches to two feet from that date to the time of the trial, as the mud sills were formerly on the surface of the ground, and during the trial he had dug down some distance to reach them. At the latter date he made

606    CITY OF FORT SCOTT v. PECK, *Adm'r*.

S. Dept.                Opinion.   Milton, J.              5 Kan. App.

certain measurements and found that the distance from the top of the mud sills to the bottom of the stringer was twelve feet, and from the bottom of the mud sills to the stringer it was from twelve feet ten inches to thirteen feet. He states that the surface of the street in 1870 was at the bottom of this mud sill. The mud sills were on the surface of the street when the trestle was made, but the testimony of Mr. Spafford, superintendent of bridges for the Railroad Company, shows that, about twelve years before the date of the trial, he put in a new trestle; that he found the mud sills on the surface and put new ones about two and a half feet below the surface of the street, making longer bents and setting them down into the ground. He stated that the bents were about twelve feet long and the other dimensions twelve by twelve inches, and that they rested on the mud sills. The witness Deamer, who testified in regard to the height of the trestle when he raised the track in 1872 or 1873, stated that he thought it was ten or twelve feet, but that he had never measured it. From the foregoing, in connection with the undisputed evidence that the trestle was from eight feet ten inches to nine feet four inches in height just after the casualty, it will be seen that the space between the bottom of the stringers and the street could never have been greater than ten and one-half feet, and, if the witness meant that he put the mud sills down so that their upper surface was two and one-half feet below the street level, then the passageway was never more than nine and one-half feet in height; for the sinking of the mud sills below the surface of the street and putting in longer bents did not affect the height of the stringers above the street.

Thus having a means of fairly accurate measure-

CITY OF FORT SCOTT v. PECK, *Adm'r.*     607

June 9, 1897.          Opinion.   Milton, J.          E. Div.

ment, we may say that this bridge was never of suffi-
cient height above the street, and that it necessarily
impaired the usefulness of the street.   But this street
from various causes kept filling up, and was occasion-
ally scraped down and lowered somewhat by the em-
ployees of the City.   That it was filled somewhat at the
time of the casualty is beyond any question, but it is
impossible for us to determine, and the jury could not
have ascertained with certainty from the evidence, to
what extent the surface of the street had been raised.
We think they were justified in finding that there was
negligence on the part of the Railroad Company, by
reason of its failure to comply with the statutory re-
quirements; also, that there was a continuing duty on
the part of the City, in respect to the street under the
trestle, to put it in a safe condition for use by the
public, and that its failure to discharge its duty ren-
dered it liable in an action for injuries resulting from
its negligence.

The counsel for the City contend that the doctrine
of the case of *Talbot v. Taunton*, supra, should govern
in this case.   We observe that in the case just referred
to, the action was against the city alone.   We think
this decision is applicable under our statutes, which
declare the duties of cities and railroad companies in
relation to public streets.

In the case at bar we cannot say that the City was
not responsible for the condition of the street under
the trestle, for the reason that the evidence indicated
that there was an accumulation of dirt to some extent
above the natural surface of the street, and that it
failed to require the street to be put into such condi-
tion as not to have necessarily impaired its usefulness
at the time the trestle was built.   Nor could the City
relieve the Railroad Company from the consequences

of its failure to comply with the law, by any agreement between the City and the Railroad Company. We cannot say that the Railroad Company should not be held liable, unless the evidence clearly and without any material conflict showed that it had performed its duty under the law. This was not shown. All these issues were submitted to the jury and its verdict upon conflicting evidence has received the approval of the trial court.

In view of the foregoing considerations, we are not warranted in disturbing the verdict and judgment, unless we should find that the instructions of the court were improper, or that the court's refusal to give certain instructions was erroneous. One of the instructions asked was, that the jury should return a verdict for the defendants. Another was in respect to the knowledge or means of knowledge on the part of the deceased in respect to the height of the trestle above the surface of the street, and of the height of the omnibus, and also his knowledge as to other convenient and safe ways whereby he could have reached his destination, declaring that if such knowledge or means of knowledge existed, deceased was guilty of such contributory negligence that the verdict should be for the defendants. Another instruction directed the return of a verdict for the defendants if the jury believed from the evidence that the night was light and clear and that the deceased as he approached the trestle could have seen it by using his eyes. Another instruction refused was to the effect that if there were other routes of travel that were safe and convenient, and if the deceased had knowledge of them and of the condition of Third Street at the trestle, or had reasonable opportunity to know them, he was bound to take one of such other routes,

CITY OF FORT SCOTT v. PECK, *Adm'r*.   609

June 9, 1897.          Opinion.   Milton, J.          E. Div.

and failing to do so the plaintiff could not recover. Of course the first instruction was properly refused. The second instruction was an incorrect proposition and told the jury exactly what constituted negligence, thus invading their province. The next instruction refused is subject to the same objection, and it was also very incomplete. The last instruction, the refusal of which is complained of, is objectionable for the foregoing reasons, and it is not a good declaration of law.

Counsel for the City complain of instruction number eighteen which was given by the court. This related to the inference of the exercise by the deceased of ordinary care and prudence upon the instinct of self-preservation, in the absence of evidence as to what he may or may not have done immediately prior to the injury he received. This instruction is drawn from the language of the Supreme Court in the case of *Dewald v. K. C. Ft. S. & G. Rld. Co.*, supra, and has been recently employed in the case of *A. T. & S. F. Rld. Co. v. Rowan*, supra.

It is further contended that the verdict is excessive in view of the small amount which the deceased had contributed to his father in the three years preceding his death. We should be inclined to adopt this view were it not for the fact that the defendant in error was to make his home with his son when the latter should marry. No doubt the jury regarded that as the important element in the matter of damages. We are not prepared to say that the sum awarded was excessive from this point of view.

The judgment of the trial court will be affirmed.