THOMAS HUDSON v. M. K. & T. RAILWAY CO.

1. MASTER AND SERVANT; *Tortious Acts of Servant.* A master is not responsible for the tortious or wrongful acts of his servant, when these acts are not directly authorized by him, nor done in the course or within the scope of such servant's employment.

2. ———— *Allegations in Pleadings.* A general allegation that the master by his servant made the assault, is overborne by a statement of the actual facts which shows a mere volunteer assault by the servant, and one outside the scope of his employment.

3. ———— *Where Servant is Personally Liable.* Where it appears that plaintiff was authorized to receive freight for certain parties, and in pursuance thereof went to the depot of defendant and there demanded the same of the agent who was in charge of the depot and authorized to receive and deliver freight, and while so demanding it the said agent made an assault upon him, and it does not appear that said assault was made in ejecting or attempting to eject plaintiff from the depot, or in preventing or attempting to prevent him from committing any injury to the property of the defendant, or from transgressing any rules for the regulation of its depot and the transaction of its business, *held,* that it did not appear that the company was liable for the assault, and that only the agent who actually made it was liable.

*Error from Labette District Court.*

ACTION by *Hudson* to recover from the *Railway Company* damages for personal injuries inflicted by one Trotter who was at the time a servant in the employ of the defendant company. The facts as stated in the petition will be found in the opinion. The *Railway Company* demurred. The district court at the November Term 1874 sustained the demurrer, and gave judgment in favor of the defendant for costs. *Hudson* brings the case here on error.

*Cory & Kimball,* for plaintiff, cited 14 How. 485; Story on Agency, § 452; Smith on Master & Servant, 152; 1 Redf. on Rlys. 532; 57 Me. 202; Edw. on Bailments, 579.

*T. C. Sears,* for defendant, cited Smith's Master & Servant,

151; Wharton's Law of Neg., § 162; Shear. & Redf. Neg.,
§ 62; 19 Ohio St. 110; 38 Cal. 631; 6 Cowen, 189; 39 N.Y.
381; 12 Allen, 49; 26 Ind. 70; 70 Penn. St. 119; 24 Conn.
54; A. & A. on Corp., § 310; 18 Iowa, 200; 38 Ind. 126.

The opinion of the court was delivered by

BREWER, J.: The district court sustained a demurrer to
the petition, and this is the ruling complained of. The peti-
tion is as follows:

(*Court, and Title.*) "The plaintiff, Thomas Hudson, shows
to the court and alleges, that at the time of the commit-
ting of the wrongs and grievances hereinafter mentioned,
the defendant, the Missouri, Kansas & Texas Railway Com-
pany, was a railroad corporation duly incorporated and act-
ing under the laws of Kansas, and doing business as a public
carrier of persons and goods in and through the city of Par-
sons, in Labette county, and was the owner of a certain rail-
road known as the Missouri, Kansas & Texas railroad, together
with the track, cars, locomotives, engines, depots, freight-houses
and appurtenances thereunto belonging; and that said defend-
ant had at said city of Parsons freight-houses and depots for
the purpose of receiving, storing and caring for the goods and
freight shipped on and over the said railroad, by and for the
patrons of said defendant; that said defendant, on February
7th 1874, had in its employ, at the said city of Parsons, one
certain Marcus L. Trotter, as agent, whose duty and business
it was, under and by virtue of his said employment, to have
*the care, charge and control over the said freight-houses and
depots of the said defendant, and to receive and deliver freight
and goods consigned to and delivered at said depot, to or from
the proper parties and their agents entitled thereto;* and that at
the time, and while said freight-house and depot were in the
possession of, and under the control of the said Trotter, under
and by virtue of his said employment as agent of said defend-
ant, and when said freight-houses and depots were open for
the free exit and entrance of persons who had business of any
kind or nature appertaining thereto, to transact in or about
said freight-houses or depots, and while the said plaintiff was
in the due and legal prosecution of his business, on said Feb-
ruary 7th 1874, at and in the said freight-houses and depots
of the said defendant, with proper orders and authority from
Vanmeter & Bro., John Conroy, M. M. Neely, and other

merchants and persons, as the hired agent of said persons, and for them *asking and demanding of the said defendant, and its agent said Marcus L. Trotter, the delivery of, and to him, the said plaintiff, certain goods and freight which had been shipped and carried on and over the said defendant's railroad for him,* the property of said Vanmeter & Bro., Conroy, and Neely, and others in whose employ the plaintiff was, and which goods and freight were consigned to said parties at Parsons, and by said defendant placed in the said freight-houses and depots at said Parsons, *the said defendant, by its said agent Marcus L. Trotter, did unlawfully and with force assault, insult, beat, bruise and wound the said plaintiff, by striking him the said plaintiff on his head, face and neck, with a large iron rod or poker,* by means of which striking by the defendant the plaintiff was felled to the floor, and the bones of his face and neck fractured and broken, and the defendant by its agent then and there assaulted, struck, kicked, beat, bruised and otherwise misused and maltreated the said plaintiff, by reason of which striking with the iron rod or poker, and the kicking, knocking, beating, bruising and wounding of the plaintiff, by said defendant, and its agent said Marcus L. Trotter, he the said plaintiff became and was sick and disabled for a long space of time, and was obliged to and did expend large sums of money in doctoring and trying to cure himself from the sickness, wounds, and bruises so as aforesaid inflicted and caused by the said defendant, and its said agent, all to his great damage of $8,000 — wherefore," etc.

The question of course raised by the demurrer is, whether the facts stated show a cause of action against the company for the assault and battery actually committed by one of its agents. The mere fact that Trotter was in the employ of the defendant at the time of the assault, does not render it responsible therefor. It must appear that the assault was a part of the employment, or in the course of the employment; otherwise the assailant is himself alone responsible. There is no question as to the rule of law applicable, as will appear from the following citations:

"A master is ordinarily liable to answer in a civil suit, for the tortious or wrongful acts of his servant, if those acts are done in the course of his employment in his master's service.

The maxim applicable to such cases being, *respondeat superior*, and that before alluded to, *qui facit per alium, facit per se*. This rule, with some few exceptions which will hereafter be pointed out, is of universal application, whether the act of the servant be one of omission or commission ; whether negligent, fraudulent, or deceitful ; or, if it be an act of positive malfeasance or misconduct, if it be done in the course of his employment, his master is responsible for it *civiliter* to third persons."—Smith's Master and Servant, p. 151.

"It has already been said that to make the master liable for the servant's negligence, this negligence must be in the course, or, as it is sometimes called, 'scope' or 'range' of the latter's employment."—Law of Negligence, Wharton, § 162.

In *Story v. Ashton*, 4 L. R. Q. B. 426, Chief Justice Cockburn laid down the rule as follows: "The true rule is, that the master is only responsible so long as the servant can be said to be doing the act, in the doing of which he is guilty of negligence, *in the course of his employment as servant*."

"A master is not responsible for *any act or omission* of his servants which is not connected with the business in which they serve him, and does not happen in the *course of their employment*."—Shearman & Redfield on Negligence, § 62.

The only difficulty is in the application of this rule to the facts. Was Trotter acting in the course of his employment in making the assault? For it does not appear that it was a part of his employment, that is, that he was employed directly to make the assault. Was it in the line of his duty, and growing out of the services he was employed to perform? He was as it appears in charge of the company's depot. As such it was his duty to remove therefrom all persons improperly there, or improperly conducting themselves, though otherwise lawfully there. If in the supposed performance of this duty, and in ejecting plaintiff from the depot he had improperly ejected him, or had used unnecessary force in ejecting him, the company would have been liable, because he was doing that which the company had employed him to do, acting in the very line and course of his employment, and any mistake or violence on his part was the mistake or violence of his principal, the company. But it is not pretended in the petition that this assault was committed in ejecting or at-

31—16 KAS.

tempting to eject plaintiff. Neither is it pretended that the assault was made in preventing or attempting to prevent the plaintiff from improperly taking away goods, or from committing any injury to the property of the plaintiff, or from transgressing any of its rules for the regulation of its depot or the transaction of its business. It is merely charged that the assault was committed by Trotter upon plaintiff while he was asking and demanding freight which he was entitled to receive. The gist of the complaint is very fairly and forcibly stated by the learned counsel for plaintiff in error when they say, "The plaintiff at the time he received the injury complained of was rightfully in defendant's depot inquiring about and demanding the freight of his principals of and from the said agent of the defendant; and while there, in the prosecution of his duties with the said defendant, and in their depot, he received from the said agent, not the freight of his principals, but the iron poker of the defendant, causing the injury complained of." In other words, Trotter was employed to deliver freight; plaintiff came and demanded freight; Trotter replies to his demand with an assault. Was such assault in the course of Trotter's employment? Did it grow out of any services he was engaged in, or was it in the line of his duty? It seems to us it was clearly disconnected therefrom, and a mere volunteer assault. True, the employment may have given the opportunity and occasion, but it was not an act which in any fair sense the company could have been said to have employed him to do, or to have anticipated that he would do, nor an act which was the act of the company. Reverse the circumstances, and suppose that plaintiff, as the servant and in the employ of certain merchants, went to the depot of defendant in charge of the agent Trotter, to receive their freight, and while so demanding and receiving freight assaulted Trotter with a poker: would the merchants, his masters, and in whose employ he was, be responsible for that assault? Would it have been in the line or scope of his employment? Clearly not. A party goes into a store to purchase goods, and is therefore rightfully there. He makes

an inquiry as to the price of an article of a clerk behind the counter, who in reply takes a weight and knocks him down with it. Can this be said to be an act which the proprietor contemplated, when he employed the clerk? That it was in the line of the clerk's employment, and that therefore the employer was responsible? But the cases are parallel. The employment in each furnishes the opportunity and the occasion; but in each the act is not one the agent was employed to perform, nor within the scope of his employment. The general allegation, that the company by its agent made the assault, signifies nothing when the actual facts and circumstances of the assault are disclosed. See upon the general questions here involved, *Little Miami Rld. Co. v. Wetmore,* 19 Ohio St. 110; *Baker v. Kinsey,* 38 Cal. 631; *Malis v. Lord,* 39 N. Y. 381; *I. P. & C. Rly. Co. v. Anthony,* 43 Ind. 183; *Railroad Co. v. Donahue,* 70 Penn. St. 119.

The judgment of the district court will be affirmed.

All the Justices concurring.