THE UNION PACIFIC RAILWAY COMPANY v. RICHARD LIPPRAND.

No. 72.

NEGLIGENCE — *facts undisputed or definitely found by jury, is a question for the court.* Whether negligence in a particular case is shown, is ordinarily a question for the jury; but when the facts are undisputed, or are definitely found by the jury, and only one conclusion can be drawn therefrom, it becomes a question for the court.

Error from Russell District Court. Hon. W. G. Eastland, Judge. Opinion filed January 4, 1897. *Reversed.*

*A. L. Williams, N. H. Loomis,* and *R. W. Blair,* for plaintiff in error.

*Geo. W. Holland,* and *William B. Sutton,* for defendant in error.

GILKESON, P. J. The defendant in error, Richard Lipprand, brought this action as plaintiff to recover damages sustained by him from a fire alleged to have been negligently set out by the defendant, plaintiff in error. The allegations of negligence in the petition are as follows :

" On the twelfth day of March, 1893, the said defendant, while running one of its trains on its road in Russell County, managed its train carelessly and negligently, and failed to employ suitable means to prevent the escape of fire from the engine that was used in running the train — the same being a freight train going west — on or about the afternoon of the date aforesaid. And the defendant carelessly and negligently permitted dead and dry grass and other combustible material to collect and remain on the right of way and land of said defendant, and also allowed dead and dry grass and other combustible material to remain and collect near the track of the road of the said

U. P. RLY. CO. v. LIPPRAND.        485

Jan. 4, 1897.        Opinion.   Gilkeson, P. J.        W. Div.

defendant, so that, by reason of the carelessness and negligence hereinbefore set forth, fire escaped from the engine of said Company used in running the train aforesaid, and set fire to the dry and dead grass and other combustible material on the right of way and other lands of the said Company ; and, by means of a continuous body of dry grass and other combustible material, the fire was communicated, without any fault of the plaintiff, to the premises of the plaintiff, and then and there burned and destroyed," etc., etc.

On the trial the jury returned twenty-nine special findings. Those as to the condition of the engine, the escape of the fire, and the management of the train, were as follows :

1. "Was not Frank Schuyler the engineer in charge of engine 712, attached to train No. 11, on March 12, 1893?   A. Yes.

2. "Was not Chas. Petrie the fireman on that train?   A. Yes.

3. "Was not Mr. Schuyler a careful and competent engineer?   A. Yes.

4. "Was not Mr. Petrie a careful and competent fireman?   A. Yes.

5. "Were not Mr. Schuyler and Mr. Petrie both performing their respective duties properly when the train passed between mile-posts 250 and 251?   A. For the want of sufficient evidence we can't say."

7. "Did the fire which damaged plaintiff's property start from an engine belonging to defendant?   A. Yes.

8. "If you answer the last question in the affirmative then state the number of the engine from which the fire started?   A. 712.

9. "Was not engine 712 furnished with well-known, improved and reasonably safe appliances to prevent the escape of fire or sparks?   A. Yes.

10. "Were not all of said appliances in good order and proper position on March 12, 1893?   A. For want of sufficient evidence we can't say.

10½. "Is it possible to construct and equip a

486        U. P. Rly. Co. v. Lipprand.

N. Dept.          Opinion.   Gilkeson, P. J.        5 Kan. App.

locomotive so as to entirely prevent the escape of sparks and fire and furnish draft sufficient for the engine to do its work when it is carefully and properly operated?   A.  No."

12.  "Was it not found by the inspector at such time to be in good and safe condition?   A.  Yes."

They also found in reference to the wind, and where the fire started, and the fire-guard of the defendant, as follows :

13.  "Was there not an unusually high wind blowing from the south or southwest at the time the fire started?   A.  No.

14.  "Did not the fire start about 140 feet north of the track and between mile-posts 250 and 251?   A. Yes.

15.  "Had not the defendant burned a strip about 140 feet wide for a fire-guard along the north side of the track between mile-posts 250 and 251, and along the south side of the Smith stubble field, prior to March 12, 1893?   A.  Yes.

16.  "Did not the fire start on the north side of the fire-guard?   A.  Yes.

17.  "Would not such a fire-guard as defendant had on the north side of its track be sufficient, under usual and ordinary circumstances, to prevent fire being communicated from passing engines to combustible material on the outside of the fire-guard?   A.  No.

18.  "Was not the land where the fire started in cultivation?   A.  Yes.

19.  "Had not the land where the fire started been under cultivation since 1880 or 1881? and if it had not been, state for how many years it had been under cultivation.   A.  It was, but not continuously.

20.  "Had not Chas. Smith plowed two furrows along the south side of the Smith stubble field at the time the fire-guard had been burned by the section foreman?   A.  Yes.

21.  "Had the defendant been in possession of, or exercised any control over, the land included in the Smith stubble field, since said field had been in cultivation?   A.  Yes."

They also found as to the condition of the buildings :

22. "Had the buildings, which the plaintiff claims were destroyed by fire, been unoccupied since the spring of 1892? and if not for that length of time, state how long they had been vacant.   A.  Yes."

The petition does not allege generally that the injuries complained of were committed by the defendant "in the operation of its railroad."   Its allegations are limited to those of the negligence of the defendant in managing the train, by failure to employ suitable means to prevent the escape of fire from the engine, or in permitting dead and dry grass and other combustible material to remain near its track, on its right of way and on its land.   It is true that there is an allegation in the petition that "by means of a continuous body of dry grass and other combustible material the fire was communicated, without any fault of the plaintiff, to the premises of the plaintiff;" but this does not help the plaintiff, for the defendant is not charged with any fault in permitting the existence of the grass and material.   *U. P. Rly Co. v. Mills*, just decided, and authorities there cited.

We concede — with serious doubt — that the petition is sufficient to authorize a recovery on proof of negligently permitting the accumulation of combustible material on the right of way ; but do not the special findings and evidence in this case defeat the plaintiff's claims?   Whether negligence in a particular case is shown, is, ordinarily, a question for the jury ; but when the facts are undisputed or are definitely found by the jury, and only one conclusion can be drawn therefrom, it becomes a question for the court.   *K. P. Rly. Co. v. Pointer*, 14 Kan. 37 ; *Dewald v. K. C. F. S. & G. Rld. Co.*, 44 id. 586 ; *U. P. Rly. Co. v. Buck*, 3 Kan. App. 674.

488        U. P. Rly. Co. v. Lipprand.

N. Dept.            Opinion.  Gilkeson, P. J.        5 Kan. App.

There is nothing in the pleadings or the evidence to indicate whether the fire was purely accidental, or was caused by the negligence of the defendants, either in the management of the train, want of suitable means to prevent the escape of fire, or use of a defective engine or appliances. The jury found that the fire started from an engine — No. 712 — belonging to the defendant; but why or how the fire escaped they fail to state, and there is not a particle of testimony to show. The jury found, and the evidence is uncontradicted, that the engineer and fireman were careful and competent, and were doing their duty properly when the train passed the point where the fire originated. It is true, the jury say, for want of testimony upon this point, they were unable to state whether the engineer and firemen were doing their duty; but this answer is unwarranted. There was testimony upon this point and it was uncontradicted. The testimony shows that engine No. 712 was furnished with the most approved appliances to prevent the escape of fire or sparks; that it was found to be in good order when inspected on its arrival at Ellis, March 14; and that it is impossible to construct and equip a locomotive so as to entirely prevent the escape of sparks and fire and furnish draft sufficient for it to do its work, even though carefully handled; and the jury so found. The jury answered that they were unable to state whether the appliances were in good order and proper position at the time the fire started; yet the testimony on this proposition is uncontradicted. For aught that appears in the record, the jury must have rendered their general verdict solely on the ground of the defendant's negligence in the care of its right of way. But this theory is not sustained by the findings nor the evidence. These show that the fire originated

140 feet north of the track; that the Company had prepared a fire-guard of that width on the north side; that the fire originated on cultivated land in the possession of one Smith, and not on the fire-guard; that Smith had plowed two furrows south of this cultivated land. Can it be said with any justice that a railroad company any more than a private individual is chargeable with negligence when it has guarded against danger from the accidental escape of fire? We think not. Nor is there any testimony showing that there was, on this 140 foot fire-guard or anywhere near the track, any combustible material which was ever burned by this fire. There is testimony that there were some tall grass, weeds, foxtail, etc., in a little draw, but whether it was on the right of way, or how far from the track, is not shown. But it is argued that the jury found that this fire-guard was not sufficient under ordinary circumstances. Our answer to this is, that there is no testimony to base this finding upon. We might add here, that the jury also found there was not an unusually high wind on the day of the fire, when every witness who testified concerning the wind characterized it as "unusually high," a "terribly high wind," etc.

Many errors are assigned as to the admission of, and refusals to strike out, testimony, and we think most of them are substantial. The objections should have been sustained as to the following: Witnesses Anspaugh and Raincamp; describing buildings on the land from measurements made of foundations long after the fire. This testimony was incompetent for any purpose, and was certainly prejudicial to the defendant. Witness Kauffman; stating the value of his labor in plastering one the buildings, and how much it cost him to build the granary at the time it was built, and

490        U. P. Rly. Co. v. Lipprand.

N. Dept.        Opinion.   Gilkeson, P. J.        5 Kan. App.

the value of the lumber in the house when he built it. And we might add here, that most of the testimony with reference to the condition of these buildings was incompetent. There is no testimony to show their condition immediately previous to the fire; but it was shown, and the jury so found, that they had been vacant and unoccupied since the spring of 1892, and this case was tried in November, 1894. No witness testified that he had seen the buildings at any time within several weeks prior to the fire. A majority of the witnesses based their estimates of value upon an inspection of the ruins, and their estimates were for the cost of entirely new buildings.

The contract between the Union Pacific Railway Company and Charles A. Smith; this was incompetent for any purpose. The refusal to allow the defendant to show by witnesses Raincamp and Kauffman what the buildings were composed of; this certainly was competent as to the damages sustained. The plaintiff's objections to the testimony of witness Petrie as to the operation of an engine with finer netting and as to whether the engineer did anything that tended to increase the amount of sparks from the smoke-stack or ash-pan, and the testimony of Easterbrook as to the adoption of approved appliances, should have been overruled; but under the findings in this case the rejection of this testimony was not prejudicial to the defendant, and we mention the errors only to avoid their repetition in the retrial of this case.

We also think that the court erred in its instructions, particularly in the following:

"No. 20. There is some testimony tending to show that the defendant Railway Company owned the land upon what is known as the Smith land, four hundred feet immediately north of the defendant's rail-

road, at the point where the fire occurred. You are instructed that there is no evidence offered, aside from this evidence, as to what is the scope and extent of the right of way at this point.''

There is not a particle of testimony in this case warranting this instruction. Even if the contract had been competent to prove a right of way, it certainly would not have proven that it was four hundred feet on the north or south side of the track. The contract merely shows that the Company reserved a strip of land in the quarter-section therein described, four hundred feet wide, to be used for the right of way or other railroad purposes, where the railroad was located in said quarter-section. If the fact that a railroad company owns a certain amount of land on each side of its track, is to be taken as the criterion for the width it is required to keep clear of weeds and combustibles, then we must hold that, where the track runs through the center of a section which is entirely owned by the company, as is frequently the case, the company must keep one-half mile on each side of its track clear on this section, and less on adjoining sections. Such a contention has no foundation either in law or reason. As stated by Garver, J., in *U. P. Rly. Co. v. Buck*, 3 Kan. App. 675:

'' Railway companies are limited, barring exceptional cases, by the laws of this state to a right of way 100 feet wide — 50 feet on each side of the center of the track. In such cases the burning or removal of combustible materials to the extent of the right of way would certainly be all that could be required; and the fact that sparks accidentally escaping from passing engines fell beyond the right of way, setting fire in dry grass on adjoining premises, would not make the company liable. Railway companies have no right to enter upon the lands of adjoining owners for the purpose of making fire-guards. There is no

express statutory requirement as to the condition in which a right of way must be kept, rules upon this subject being merely the outgrowth of judicial decisions.   But when it is held to be negligence to permit combustible materials to accumulate on the right of way in such manner as to endanger adjoining property, it seems reasonable that the required care be limited to the width recognized by statute as sufficient for the operation of a railroad.   Otherwise, a court might find itself in the anomalous situation of holding that there was no negligence when combustible materials were removed from a right of way 100 feet wide through one tract of land, and that there was negligence when a like space was cleared upon an adjoining tract through which the right of way happened to be of greater width.''

In view of the special findings, the rulings of the court in admitting, rejecting and refusing to strike out testimony, and of the instructions herein particularly pointed out, we can reach no other conclusion than that another jury should pass upon the matters of fact in controversy between the parties.

The judgment will, therefore, be reversed and the cause remanded for a new trial.