## THE CITY OF CHANUTE v. LINA HIGGINS.

### No. 12,765.　(70 Pac. 638.)

#### SYLLABUS BY THE COURT.

1. CITIES AND CITY OFFICERS — *Personal Injuries — Question of Law.* In an action to recover damages for personal injuries, where the facts are undisputed or sufficiently found by a jury, and but one conclusion can be drawn therefrom, whether such facts constitute negligence is a question of law.

2. PRACTICE, SUPREME COURT — *When Verdict is Conclusive — Passion and Prejudice.* A reviewing court may not set aside the verdict of a jury and a judgment rendered thereon by the trial court on the ground that it is excessive, unless the amount so found is so clearly disproportionate to the injury sustained, or so grossly excessive, as to render it morally certain that such verdict could not have been the result of the calm and deliberate judgment of the triers, but was the result of passion and prejudice.

Error from Neosho district court; L. STILLWELL, judge. Opinion filed November 8, 1902. Affirmed.

*H. P. Farrelly, T. J. Hudson, C. A. Cox,* and *S. C. Brown,* for plaintiff in error.

*Lapham & Brewster,* and *W. R. Cline,* for defendant in error.

The opinion of the court was delivered by

GREENE, J.: Lina Higgins recovered judgment against the city of Chanute for injuries alleged to have been sustained by falling into the entrance of an unguarded cellar-way opening in the sidewalk of one of the principal streets of the city.

It appears from the pleadings and admissions that the city of Chanute pretended to grant Jones Brothers, their heirs and assigns, the right to excavate on the west side of Main street, adjoining lot 1, block 2, in said city, a cellar-way not exceeding four feet in

width or thirty feet in length and to maintain therein a stairway to the cellar or basement of the building erected thereon so long as the building should be maintained.   This ordinance also provided that the grantees, their heirs and assigns, should construct and maintain a good and substantial railing on the east side and south end of such opening.   Under this ordinance the building, which was for private purposes, was erected, and a cellar-way four feet wide and thirty feet long paralleling the sidewalk was excavated and steps placed therein.   The outside and rear end were protected by an iron railing; the entrance was unguarded.   This cellar-way occupied half of the sidewalk and was erected and maintained with the knowledge and consent of the city for a period of about two years before the accident.

It appears from the evidence that on December 12, 1898, the plaintiff, a woman twenty-five years of age, left the store where she was engaged as a clerk, about seven o'clock in the evening, and started down this sidewalk.   The evening was dark and stormy and there were not sufficient lights.   While passing along on the sidewalk, and without fault on her part, she walked into this unguarded cellar-way and fell to the bottom, a distance of about ten feet, and sustained injuries, for which she sought to recover in this action.

It is argued that the court below erred in giving the following instructions:

"2.   You are instructed that it was the duty of the defendant city to exercise ordinary care and prudence to keep its streets in a reasonably safe condition for travel thereon.   In the light of the pleadings in this case, and such of the testimony as is undisputed, it appears that some years prior to the time when plaintiff alleges she sustained the fall in question, the said city, by an ordinance it enacted, authorized the con-

struction of this open cellar-way upon a portion of the area of one of its streets upon which persons passing along on foot were accustomed to travel. This cellar-way had a guard, or rather railing, on the side next to the street and at the south end, but the north end was left open.

"3. You are instructed as a matter of law that said city, in permitting this cellar-way to be constructed on the footway portion of one of its streets, with one end of said cellar-way left open, as before explained, was guilty of at least what in law is styled ordinary negligence. And the fact that there may have been a portion of the area of said street extending from the outer side of said cellar-way to the street curbing that was available for use as a sidewalk is not, in itself, any defense to this action. The public had the right, in law, to have all of said street kept in a reasonably safe condition for travel thereon."

The facts upon which these instructions were based, as expressed by the trial court, were undisputed. It is contended that, whether these undisputed facts constitute negligence on the part of the city, was a question of fact and should have been submitted to the jury. Where the facts are undisputed, but of such nature that different minds will draw different conclusions from them as to the reasonableness of the parties' conduct, it is a proper question for the determination of the jury. ( *K. P. Rly. Co. v. Pointer*, 14 Kan. 38; *C. B. U. P. Rld. Co. v. Hotham*, 22 id. 41.) Where, however, facts are undisputed, or are sufficiently found by the jury, and only one conclusion can be drawn therefrom, whether such facts constitute negligence is a question of law. (*Kansas Pac. R. Co. v. Butts*, 7 Kan. 309; *U. P. Rly. Co. v. Lipprand*, 5 Kan. App. 484, 47 Pac. 625; *Dewald v. K. C. Ft. S. & G. Rld. Co.*, 44 Kan. 586, 24 Pac. 1101.)

We think it impossible for fair and reasonable minds

Chanute v. Higgins.

to come to different conclusions from the admitted facts in this case.   The cellar-way paralleled the sidewalk and occupied about one-half of its width on one of the principal streets of the city.   The entrance was unguarded.  It was a dangerous excavation, and there was nothing to prevent a person on a dark night, while walking along that street, from walking into it. Streets and sidewalks are for the exclusive use of the public as passageways, and it is the duty of every city to keep and maintain the whole width and every part thereof free and unobstructed and in a safe condition for the uses for which they are intended. (*Smith v. City of Leavenworth*, 15 Kan. 81.)   It was negligence for the city to allow this cellar way, with an unguarded opening, to be maintained and to occupy a part of one of its sidewalks.   The instructions complained of were as favorable as the city had any reason to expect.

It is complained that the jury were actuated by prejudice, and it is said that this is evidenced by excessive separate items of damage and its general verdict. The jury allowed plaintiff $100 for medical attendance.   The evidence proved that she only expended $70, and that she was required to, and did, remit $30 of said sum.   It is true that the evidence only proved that she had paid $70 for such services, but there was some evidence that she had other physicians attending her, and it is silent as to what she paid or the amount incurred to them.

It is contended that the item of damages for loss of time was excessive and that this showed prejudice on the part of the jury.   The difference between the amount she should have recovered, as computed by the plaintiff in error, and the amount allowed by the

jury, is too small to authorize a court to say that it was the result of prejudice.

It is contended that the general verdict is excessive. The total amount allowed was $4358. There was testimony that this woman was permanently injured, both internally and externally. The extent of her injuries, as nearly as it was possible, was presented to the jury by eminent physicians, both for the plaintiff and defendant. She was required to exhibit to the jury her ankle, which, she testified, was so injured by the fall that she was compelled to wear a brace to enable her to walk. It was also in evidence that her internal injuries were permanent, entirely disabling or greatly impeding her in earning a livelihood. While the verdict seems to have been liberal, it is not so wanting of support in the evidence or so grossly excessive that this court can say that it was the result of passion or prejudice.

Some contention is made that in the argument to the jury one of the plaintiff's counsel made highly inflammatory and prejudicial remarks. The court, upon objection, instructed the jury not to consider these remarks, and it appears from the testimony of some of the jurors who testified on the application of the defendant below for a new trial that these remarks were not prejudicial and did not have much effect, as they testified that "all speeches of any and all lawyers in the case was 'sweetness wasted on the desert air.'"

It is also alleged that the court erred in refusing to grant the defendant a new trial. It is said that the misconduct of the jury and the manner in which they arrived at its verdict were such that the verdict should not have been permitted to stand. It is alleged that the verdict was arrived at by each juror's setting down the amount he thought the plaintiff ought to re-

cover, adding these several sums together and dividing the total amount by twelve, the quotient being the total amount of the verdict. J. K. Harkness, one of the jurors, testified that this was the manner of arriving at the verdict. It is evident, however, that the court below did not believe the statement of Harkness, and upon this we entirely agree with that court. Every other juror who testified declared that Harkness's statement was false.

There are some other alleged irregularities on the part of the jury, but nothing that appears prejudicial to the rights of plaintiff in error.

The judgment of the court below is affirmed.

All the Justices concurring.