MATTIE CRELLY, *Appellee*, V. THE MISSOURI AND KAN-
SAS TELEPHONE COMPANY, *Appellant.*

No. 16,680.

SYLLABUS BY THE COURT.

MASTER AND SERVANT—*Scope of Servant's Employment—Lia-
bility of Master to Third Parties—Assault by Agent.* A local
manager of a telephone company demanded of an operator
of the company, who was about to quit the service, that she
sign a voucher for the compensation due her, and when she
refused to sign the voucher he violently assaulted and beat
her. *Held,* in an action brought by her against the telephone
company to recover damages for the assault and resulting
injuries, that the assault and use of force by the local man-
ager to procure the signing of the voucher were not within
the scope of his employment, and the telephone company was
therefore not liable for his wrongful acts.

Appeal from Crawford district court. · Opinion filed
February 11, 1911. Reversed.

*J. W. Gleed, John L. Hunt,* and *D. E. Palmer,* for the
appellant.

*J. J. Campbell, B. S. Gaitskill,* and *W. J. True,* for the
appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.:   This was an action by Mattie
Crelly to recover damages from the Missouri and Kan-
sas Telephone Company for injuries resulting from a
violent assault made upon her by E. S. Casen, the local
manager of the company at Pittsburg, Kan.

She alleges that Casen was local manager, with
authority to supervise and control the business of the
company at Pittsburg, including authority to employ
and discharge the servants of the company in that
office, including herself, as chief operator, and that
on October 25, 1907, while she was in the employment

of the company, Casen came into the office and commanded her to sign a salary voucher, which she declined to do until she could figure out the amount actually due her, and that after another demand and refusal he struck her upon the chest with great force and violence, then shoved her seven or eight feet and ordered her from the room; that as she left the room he struck her several blows on the back and shoulders, and would have pushed her down the stairway leading to the street but for the interference of other employees of the company.

The answer of the company was a general denial, and also that Casen was not authorized to do the acts complained of, and that if such acts were committed he did not act as its agent or servant. The averment that Casen was not acting for the company in assaulting and beating appellee, or with its authority, was verified.

The testimony of appellee, in a general way, sustained the allegations of her petition. It appeared that she had learned from the district manager at Joplin that she was to be discharged, and that shortly afterward, while she was preparing to leave, Casen asked her to sign the voucher. When she refused he struck her with his fist, and then she struck him with her umbrella, and following this he violently shoved her through a door, and she in turn kicked him. He continued to push and strike her until another employee interfered.

Among other special findings the following were returned:

"Ques. Did Casen assault Miss Crelly because she refused to sign the voucher? Ans. He did.

"Q. Were the plaintiff's injuries due to the assault occasioned and caused by her refusal to sign the voucher? A. Yes."

In a general verdict the jury awarded damages to appellee in the sum of $1470.

The telephone company appeals, and raises the question whether on the pleadings and the plaintiff's own testimony it can be held responsible for the assault of Casen upon appellee and liable for the resulting injuries. It is argued that, accepting her testimony as true, the assault of Casen had no necessary or legal relation to his authority from the company or his duty to it. The contention is that the assault, whatever may have been the occasion or provocation, did not tend to further any business or purpose of the company and was not one of the methods or things which came in the line of Casen's duty or any interest which he was employed to promote, and that the assault was a personal wrong of Casen, for which he alone is responsible.

The general rule is that the master is responsible for the acts of his servants done in the execution of the master's business and within the scope of his employment. It is not enough to exempt the master that the act is willful or malicious or in excess of the authority expressly conferred. If the tortious act is done while the servant is acting in behalf of his master and within the scope of his employment the master will be responsible, although the act may be willful and wanton. The act, as in this instance, may have been done while the servant was in the master's service; but, unless it was expressly or impliedly authorized, or within the scope of the employment, the servant alone is responsible. The question of difficulty is whether the wrongful act is within the scope of the employment, and the contrariety of judicial opinion in cases brought to our attention arises largely from the application of this test. Here Casen was in the employ of the company, and was acting for it when he asked appellee to sign the voucher; but did the obtaining of the signature to the voucher contemplate the use of any force, or can it be said that an assault had any natural or necessary relation to the authority conferred at the time of his employment? The case is quite similar in its facts to *Hudson v. M. K.*

*& T. Rly. Co.,* 16 Kan. 470. The third paragraph of the syllabus of that case reads:

"Where it appears that plaintiff was authorized to receive freight for certain parties, and in pursuance thereof went to the depot of defendant and there demanded the same of the agent who was in charge of the depot and authorized to receive and deliver freight, and while so demanding it the said agent made an assault upon him, and it does not appear that the said assault was made in ejecting or attempting to eject plaintiff from the depot, or in preventing or attempting to prevent him from committing any injury to the property of the defendant, or from transgressing any rules for the regulation of its depot and the transaction of its business, *held,* that it did not appear that the company was liable for the assault, and that only the agent who actually made it was liable."

In the course of the decision Mr. Justice Brewer tersely stated that "Trotter was employed to deliver freight; plaintiff came and demanded freight; Trotter replied to his demands with an assault. Was such assault in the course of Trotter's employment? Did it grow out of any services he was engaged in, or was it in the line of his duty? It seems to us that it was clearly disconnected therefrom, and a mere volunteer assault. True, the employment may have given the opportunity and occasion, but it was not an act which in any fair sense the company could have been said to have employed him to do, or to have anticipated that he would do, nor an act which was the act of the company." (p. 474.)

The assault of Casen did not grow out of the service he was employed to perform, and was not an act which the company or anyone else would have anticipated that he would do. It was not a case of enforcing discipline or preserving order in the office, and was not one which contemplated the use of force. The jury found that the assault was made by Casen because appellee refused to sign the voucher. No circumstances indicate that the company contemplated the use of force

to obtain signatures to vouchers, nor was there anything to show any connection between the assault and any duty which' devolved on Casen. In the Hudson case the court used this illustration:

"A party goes into a store to purchase goods, and is therefore rightfully there. He makes an inquiry as to the price of an article of a clerk behind the counter, who in reply takes a weight and knocks him down with it. Can this be said to be an act which 'the proprietor contemplated when he employed the clerk? That it was in the line of the clerk's employment, and that therefore the employer was responsible? But the cases are parallel. The employment in each furnishes the opportunity and the occasion; but in each the .act is not one the agent was employed to perform, nor within the scope of his employment." (16 Kan. 475.)

In *Mirick v. Suchy,* 74 Kan. 715, it was held that the master is not liable for acts of a servant outside the scope of his employment, although the act was intended to promote the master's interest. In 26 Cyc. 1526 it is said:

"The test is not the character of the act, nor whether it was done during the existence of the servant's employment; but whether the injury complained of was committed by the authority of the master expressly conferred or fairly implied in the nature of the employment and the duties incident to it."

The case of *Collette v. Rebori,* 107 Mo. App. 711, involved the liability of one who sent another to collect a bill and the collector assaulted the debtor because he refused to pay. It was said:

"The best-considered cases hold that the master is liable to third persons for the negligent, fraudulent or tortious acts of his agent or servant when it is shown that the agent or servant was acting within the scope of his employment and that the act complained of was done as a means or for the purpose of doing the work assigned him by the master. To assault and beat a creditor is not a recognized or usual means resorted to for the collection of a debt, nor is it one likely to bring about a settlement of a disputed account." (p. 720.)

And so we might say here that to assault or beat a telephone operator is not a recognized or usual way of procuring her signature to a voucher on which to draw the wages due to her. There are many cases bearing upon the question involved, and the following are a few of those which tend to support the view that the assault did not pertain to the duty of Casen nor come within the scope of his employment: *Sachrowitz v. A. T. & S. F. Rld. Co.,* 37 Kan. 212; *Laird v. Farwell,* 60 Kan. 512; *Clark v. Folscroft,* 67 Kan. 446; *Dolan v. Hubinger,* 109 Iowa, 408; *Henry v. Railroad Co.,* 139 Pa. St. 289; *McCann v. Tillinghast,* 140 Mass. 327; *Stone v. Hills,* 45 Conn. 44; *Chicago City Ry. Co. v. Mogk,* 44 Ill. App. 17; *Holler v. Ross,* 68 N. J. Law, 324; *Sagers v. Nuckolls,* 3 Colo. App. 95; *Vanderbilt v. The Richmond Turnpike Company,* 2 N. Y. 479; *Searle v. Parke,* 68 N. H. 311; *Waaler v. Great Northern Railway Co.,* 18 S. Dak. 420; *Rounds v. Del., Lack. & West. R. R. Co.,* 64 N. Y. 129; *Mali v. Lord,* 39 N. Y. 381; *Meehan v. Morewood,* 5 N. Y. Supp. 710, 126 N. Y. 667; *Jones v. The St. Louis, N. & P. Packet Co.,* 43 Mo. App. 398; *Cobb v. Simon,* 124 Wis. 467; *The Little Miami Railroad Co. v. Wetmore,* 19 Ohio St. 110; Wood, Mas. & Serv., 2d ed., §§ 286, 307; 2 Labatt, Mas. & Serv. § 537; 1 Thomp. Com. L. of Neg. § 527; 20 A. & E. Encycl. of L. 167.

The cases are not uniform as to what acts fall within the implied authority conferred on servants or agents, but most of those cited in behalf of appellee were where the business or employment contemplated the enforcement of discipline or implied the use of some force, and the rule is that where the master authorizes force he is liable for excessive force or the abuse of the authority given. In this case the use of force did not pertain to the business intrusted to Casen by the company. It was not an incident of the authority vested in him to compute what was due operators and to procure their signatures to vouchers, and we find no basis

in the pleadings or the evidence which would justify a holding that an assault upon an operator who refused to sign a voucher came within the implied authority of Casen or can in any sense be regarded as within the scope of his employment.

The demurrer to the evidence should have been sustained, and the judgment is therefore reversed, with the direction to sustain the demurrer to the evidence of appellee and enter judgment in favor of the appellant.