No. 18,569.

IDA M. KEMP, as Next of Kin, etc., *Appellee*, v. THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

1. TRESPASSER—*Killed by Employee—Liability of Company—When Question of Fact—When Question of Law.* Where different persons' might reasonably draw different inferences and reach opposing conclusions from undisputed facts the proper inference or conclusion is one of fact for a jury, but where only one reasonable inference can be drawn, or deduction made, a question of law only is presented.

2. SAME. An employer may be held liable for the wrongful acts of his employee done in the scope of his employment. While it is difficult to define this expression with precision, as applied to all situations, it may be said generally that to fix liability upon the employer the act must not only be done in the time but in pursuance of the objects of the employment and in furtherance of duty. If done solely to accomplish the employee's own purpose or device, although in an interval of his regular service, the employer is not liable.

Appeal from Smith district court; RICHARD M. PICKLER, judge. Opinion filed February 7, 1914. Reversed.

*Paul E. Walker,* and *Luther Burns,* both of Topeka, for the appellant.

*A. W. Relihan,* of Smith Center, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This is an action to recover damages for the death of the plaintiff's minor son killed by the defendant's brakeman.

The material facts are that the plaintiff's son, Doan Kemp, and two other young men, trespassing on one of the defendant's trains, rode from Lebanon to Bellaire without paying fare. When the train stopped at Bellaire, about 10 o'clock P. M., they alighted and stood together on the platform, intending to board it again and ride farther west, still beating their way. Their purpose in stepping off was that they might get together upon the train when it moved on. As they were standing about six feet from the car next to the tender, waiting for the train to start, a brakeman, taking a revolver from the baggage car, started toward them, and when he was about eight feet away said, with an oath: "Get out of here." Whereupon they ran south and up the bank of the cut in which the train was standing. The bank was from ten to twenty feet from the car, and was eight to ten feet high. On reaching the top of the bank one of them shouted, "Go to hell." The brakeman exclaimed, "What's that?" and started after them, climbed up the bank, ran a little way after them, and fired a shot, mortally wounding Doan in the back as he, with his companions, was running southwest. Doan was forty-two feet from the train when he was shot. The railroad extends east and west through the cut at Bellaire, and this train was west-bound. The conductor, called by the plaintiff, testified to the duties of a brakeman:

"Q. State to the jury whose duty it is to keep trespassers and bums away from the train and who ride thereon without pay. A. Why any member of the crew.

"Q. That was the duty of the brakeman was it? A. Yes sir. . . .

"Q. You had authority to use force if it was necessary? A. Yes sir."

There was some evidence of an encounter between the brakeman and the trespassers, but the jury found to the contrary, and their findings, supported by competent testimony, establish the facts as stated. The defendant offered no evidence.

On a demurrer to the evidence the question was presented whether upon these facts the company was liable for the wrongful act of the brakeman in firing the fatal shot. This question again arises upon the finding of the jury and must be decided upon this appeal. Preliminary to that decision, however, is the all-important inquiry whether there was a question of fact for the jury to decide, or whether a question of law only was presented. The rule of law upon this inquiry was thus stated in an early case:

"Where the facts are disputed, negligence is a question of fact for the jury; where the facts are undisputed, and but one deduction is to be drawn from them, it presents a question of law for the courts; but where the facts are undisputed, but are of such a nature that different minds will draw different conclusions from them as to the reasonableness and care of a party's conduct, it is a proper question for the determination of a jury." (*K. P. Rly. Co. v. Pointer,* 14 Kan. 37, syl. ¶ 8.)

Other statements of the principle have been made but the rule has not been departed from. (*Dewald v. K. C. Ft. S. & G. Rld. Co.,* 44 Kan. 586, 24 Pac. 1101; *Beaver v. A. T. & S. F. Rld. Co.,* 56 Kan. 514, 43 Pac. 1136; *Chanute v. Higgins,* 65 Kan. 680, 70 Pac. 638; *Railway Co. v. Hanson,* 67 Kan. 256, 72 Pac. 773; *Cummings v. Railroad Co.,* 68 Kan. 218, 74 Pac. 1104; *Railroad Co. v. Brown,* 73 Kan. 233, 84 Pac. 1026; *Johnson v. Railroad Co.,* 80 Kan. 456, 103 Pac. 90; *Smith v. Street Railway Co.,* ante, p. 31, 136 Pac. 930.)

The evidence shows that one of the duties required of the brakeman by his employer was to eject trespassers and to keep them from riding on trains, and it seems that brakemen are presumed to have this

authority. (*K. C. Ft. S. & G. Rld. Co. v. Kelly*, 36 Kan. 655, 14 Pac. 172; *U. P. Rly. Co. v. Mitchell*, 56 Kan. 324, 43 Pac. 244; *O'Banion v. Railway Co.*, 65 Kan. 352, 69 Pac. 353.)

In the Kelly case it was held that:

"It is within the scope of the general authority of a brakeman on a freight train to prevent trespassers from getting on the train, and to remove such persons who wrongfully get thereon." (Syl. ¶ 2.)

A brakeman having authority to prevent trespassers from entering the train while performing that duty is engaged in the business of the company, or according to the usual phrase, acting in the scope of his employment. While so acting the company may be held liable for his wrongful acts. In order to create this liability it has been said:

"The act must be the result of doing the business of the master or parent, and not of an independent act done during a cessation, even momentary, of the doing of such business." (*Mirick v. Suchy*, 74 Kan. 715, 718, 87 Pac. 1141.)

It is not sufficient to fix this liability that the employment afforded the opportunity to do the wrong, or that it was done during the employment, but it must be done in the course or within the scope of the employment. (*Hudson v. M. K. & T. Rly. Co.*, 16 Kan. 470.) This is true although the act was intended to promote the master's interest. (*Crelly v. Telephone Co.*, 84 Kan. 19, 23, 113 Pac. 386.) In the following quotation from 26 Cyc. 1526, appearing in the case last cited, an endeavor is made to state the test of liability in such cases:

"The test is not the character of the act, nor whether it was done during the existence of the servant's employment; but whether the injury complained of was committed by the authority of the master expressly conferred or fairly implied in the nature of the employment and the duties incident to it."

The test is also considered in 1 Thompson's Commentaries on the Law of Negligence, § 526, in which the distinction is stated between acts done by the servant in pursuing his own ends, although done in the time covered by his employment, and those done in pursuance of his duty in the course of his employment. The author gives a quotation from the opinion in *Morier v. St. Paul, Minneapolis & Manitoba Ry. Co.*, 31 Minn. 351, 17 N. W. 952, a part of which is:

" 'If the servant step aside from his master's business, *for however short a time*, to do an act not connected with such business, the relation of master and servant is for the time suspended.   Such, variously expressed, is the uniform doctrine laid down by all authorities.  (p. 353.)' "   (1 Thompson's Commentaries on the Law of Negligence, § 526.)

Another author says:

"The simple test is, whether they were acts *within the scope of his employment;* not whether they were done while prosecuting the master's business; *but, whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him."* (Master & Servant, Wood, 2d ed., § 307.)

It is difficult to state with precision the exact meaning of the phrase "scope of the employment" but from the foregoing expressions in decisions and textbooks it may be said generally that to fix liability upon the master or employer the act must not only be done in the time, but in pursuance of the objects of the employment, in furtherance of duty.   If done solely to accomplish the employee's own purpose or device, although in an interval of his regular service, the employer is not liable.

The application of the principles just stated remains. If upon the facts found and undisputed different minds might reasonably draw the conclusion that in

pursuing the fleeing men, and shooting one of them in the circumstances stated, the brakeman was really attempting to do the service for which he was employed, the question was one of fact properly submitted to a jury. On the other hand, if the only reasonable deduction from the facts is that the brakeman in firing the shot was serving his own purposes only, without any intention of doing the duties incident to his employment, but moved by anger or other motive of his own, then only a question of law was presented. In support of the theory first mentioned it is argued that the exclamation "Go to hell," uttered when the men reached the top of the bank, indicated an intention on their part to defy his authority and jump on the train when it should start; that this inference might be reasonably drawn from their conduct, and if the jury so inferred, then the weapon was used in the course of his employment to prevent them from boarding the train. On the other hand, the defendant insists that no such inference is possible; that fleeing as the men were away from the train on the bank, eight or ten feet above, and forty-two feet from it, it is impossible that the brakeman should believe that they were still intending and would attempt to jump upon it. It contends that the only reasonable deduction is that, angered by their defiant taunt, he rushed up the bank and fired the shot, not to keep them from the train, but to punish them for the insult, thus acting purely from motives of personal revenge or resentment. Here, as in so many other cases, the line of cleavage between the duties of the judge and the jury must be determined. If the brakeman fired the shot while actually engaged in an attempt to discharge the duties devolving upon him, the company may be held liable for the wrongful act, however wanton or malicious, for it owes the duty to trespassers to refrain from wantonly or maliciously injuring them. (*O'Banion v. Railway Co.*, 65 Kan. 352, 69 Pac. 353.)

Kemp v. Railway Co.

After careful consideration we are constrained to hold that a candid mind acting normally could not reasonably infer from the facts presented in this record that the brakeman supposed or believed that these men fleeing as they were away from the train just about to start on its way, intended to suddenly turn back and board it. The fact that they were upon an embankment of considerable height and the train in the cut below between forty and fifty feet distant, and that their assailant not only climbed the bank but still pursued and fired while they were in flight, not toward, but away from the train, precludes a person whose mind is acting fairly and impartially from believing that the brakeman was acting within the scope of his employment when he fired the shot.

Courts should be careful not to encroach upon the province of jurors when the facts, although undisputed are such that the minds of candid persons may draw differing inferences and arrive at opposing conclusions. This wholesome rule, however, should not be stretched so far as to relieve the court from the solemn duty of deciding the issue in cases like this where such divergence can not be found consistently with reason and justice. In such a situation the question is one of law only.

The judgment is reversed with directions to enter judgment for the defendant.

BENSON, J. (dissenting): If there is room for a reasonable inference from the evidence that the brakeman believed that the men, although running apparently away from the train, nevertheless intended to turn toward it the moment he ceased to pursue them, baffle his efforts and board it before it was sufficiently under way to prevent, a question was presented for the jury. It might be considered that the men would be daring and foolhardy to do this, but such risks are sometimes taken as reports of frequent accidents show.

The brakeman was unquestionably in the line of duty when he approached and ordered the men away, and that his pursuit for *some* distance might be found to be in the scope of his employment will be conceded. How far the pursuit might be continued before it would become impossible to believe that it was still in the scope of his service can not be precisely fixed by any rule of law but must depend on the circumstances of the case. True it might be so far that no candid person would say that it was still within the range of employment or in furtherance of duty. In the twilight zone, where different inferences might be fairly drawn and opposing conclusions reasonably reached, the domain of the jury is supreme. Beyond that the courts should decide the issue, that is, where there is no room for an honest and reasonable divergence of views.

This proposition was stated in *O'Banion v. Railway Co.*, 65 Kan. 352, 358, 69 Pac. 353:

"The intent and purpose with which acts are done can be better ascertained by a jury composed of persons drawn from different vocations in life than by a body of professional men all engaged in one calling. Mr. Thompson, in his Commentaries on the Law of Negligence, says:

" 'It is obviously a question of fact for the determination of a jury whether, at the time of the particular act or omission by the servant, which caused the injury, the plaintiff's servant was acting within the scope of his employment, or acting outside of it to effect some purpose of his own. (Vol. 1, § 615.)' " (p. 358.)

In a case where it was contended that the court should hold as a matter of law that contributory negligence was shown, it was said that:

"Before the case could be taken from the jury on the ground of contributory negligence, it should be established beyond cavil or dispute, leaving no room for differences of opinion upon the question." (*Beaver v. A. T. & S. F. Rld. Co.*, 56 Kan. 514, 518, 43 Pac. 1136.)

The federal supreme court, in considering this proposition, said:

"It is true, in many cases, that where the facts are undisputed the effect of them is for the judgment of the court, and not for the decision of the jury. This is true in that class of cases where the existence of such facts comes in question rather than where deductions or inferences are to be made from the facts." (*Railroad Company v. Stout*, 84 U. S. 657, 663.)

In this case the men were still within the fences inclosing the right of way and but forty-two feet from the train; they were young and vigorous and appeared eager and defiant. They had already beaten their way from Lebanon, and it might reasonably be inferred that they intended, if possible, to continue on their journey.

After a careful consideration of the facts presented in the record it should be held that they admitted of different inferences and opposing conclusions, and hence presented a question of fact for the jury.

Justices MASON and WEST concur in this dissent.