Taylor v. St. Louis-S. F. Rly. Co.

No. 27,701.

HENRY TAYLOR, *Appellee,* v. THE ST. LOUIS-SAN FRANCISCO
RAILWAY COMPANY, *Appellant.*

262 Pac. 496.)

SYLLABUS BY THE COURT.

RAILROADS—*Liability for Injury to Trespasser—Ejection Done With Personal
Malice of Brakemen.* Special findings of a jury that brakemen of a railway
attacked and threw a trespasser from a train between stations, while it
was traveling at a high rate of speed, and that it was not done in further-
ance of any duty of the brakemen to the railway company, but was done
contrary to the rules and requirements of the company, and further that it
was done with personal malice and with intent to kill the trespasser,
neutralizes a general verdict rendered by the jury against the railway com-
pany and absolves the company from liability for their tortious act.

Appeal from Linn district court; CHARLES F. TRINKLE, judge. Opinion filed
January 7, 1928. Reversed.

*R. R. Vermilion, W. F. Lilleston,* both of Wichita, and *E. T. Miller,* of St.
Louis, Mo., for the appellant.

*John A. Hall,* of Pleasanton, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.:   In this appeal the St. Louis-San Francisco
Railway Company brings up for review a ruling of the trial court
denying its motion for judgment upon special findings returned by
a jury in connection with the general verdict in which Henry Taylor
was awarded damages in the sum of $2,250.   A motion for a new
trial was filed by defendant, but it was subsequently withdrawn and
the only question presented on this appeal is, did the court err in
overruling defendant's motion for judgment upon the special find-
ings?

The plaintiff alleges, among other things, that while he was
riding upon the train, admittedly without ticket or permit, he took
a position upon an oil car and while holding to a hand rail, with the
train going at a rate of about forty miles an hour, he was accosted
by two brakemen who, after some conversation with him, told him
he would have to get off the train; that plaintiff informed them he
could not get off while the train was going so fast, and thereupon

Master and Servant, 39 C. J. pp. 1280 n. 48, 1282 n. 56, 1293 n. 80.   Railroads,
33 Cyc. p. 821 n. 40; 27 R. C. L. 927.   Trial, 38 Cyc. p. 1927 n. 83.

the brakemen maliciously and willfully threw him from the train with the intention of killing him, while it was running over a high embankment. The defendant answered denying that the train was in charge of brakemen or that plaintiff was accosted or thrown off the train by any brakemen of defendant. It was further alleged that plaintiff was a trespasser on the train riding without right, transportation or the payment of fare, and that he voluntarily boarded the train without the knowledge of defendant, and rode in an exposed and dangerous position, and further, that the brakemen of defendant were not required or authorized to walk over the train while it was in motion or to eject trespassers while the train was in motion between stations, and that if plaintiff suffered any injury on the occasion mentioned it was caused by his own trespass and negligence and not by any negligence of the defendant. Special questions were submitted to and answered by the jury as follows:

"1. On the occasion in question, were the brakemen of the defendant required to walk along said northbound train while it was in motion between stations? A. No.

"2. On the occasion in question, were the brakemen of the defendant required to discover or eject persons from the train while the train was in motion between stations? A. No.

"3. If you find that defendant's brakemen threw plaintiff from the train on the occasion in question, did they do so in furtherance of any duty required of them by the defendant; if so, what duty? A. No.

"4. If you find for plaintiff, state the names of the persons who threw plaintiff off the train? A. Unknown.

"5. If you find for the plaintiff, state upon what wrongful conduct of the defendant you base your verdict? A. Reckless way of putting him off the train.

"6. Do you find that on the occasion in question, plaintiff suffered his alleged injuries at the hands of persons who, with personal malice and intent to kill plaintiff, threw him off the train? A. Yes."

The only question we have to consider is the effect of these special findings. It appears to have been contended, and that evidence was offered to the effect that none of the trainmen of defendant had anything to do with his fall from the train, but plaintiff testified that two men carrying lanterns approached him from different directions and violently threw him from the train. The jury found that he was thrown from the train by persons unknown. Assuming, as the jury seems to have done, that those who ejected him were brakemen, we have the question whether the defendant is liable for their act done not in performance of any duty they owed to the defendant,

Taylor v. St. Louis-S. F. Rly. Co.

but done with personal malice and with the intent to kill plaintiff. It has been specifically found that brakemen of the defendant were not required to discover and eject trespassers from the train while it was in motion or even to walk over the train while it was traveling between stations. The jury also found that ejecting plaintiff from the train at the time and place in question was not done in further-ance of any duty owed by brakemen to the defendant, but was in effect a violation of the rules and requirements of the defendant. Instead of being done in furtherance of any duty, those who ejected him did it with personal malice and with intent to kill. Upon these facts we are unable to hold that there was a liability of de-fendant for acts done by its employees outside the scope of their employment, and done with personal malice. It has been settled that the liability of the master for the tortious acts of his servant depends on whether they were done in the master's business and within the scope of his employment. To fasten liability on the master it is not enough that the act was done while the servant was at the time in the master's service; the authority must have been expressly conferred or is fairly to be implied from the nature of the employment and the duties incident to it, and if not done within the duties of the servant or the scope of his employment, the servant alone is responsible. (*Crelly v. Telephone Co.*, 84 Kan. 19, 113 Pac. 386.) This rule was applied in *Kemp v. Railway Co.*, 91 Kan. 477, 138 Pac. 621, where a brakeman killed one of two trespassers who had been riding on the train but had left it at a station and were standing near the train with the appearance of an intent to board it again when the train started. The brakeman with a revolver in hand started towards the trespassers saying to them, "Get out of here." They ran up an embankment away from the train exclaiming, "Go to hell!" and the brakeman following them fired a shot which killed one of the trespassers when he was forty feet away from the train. It was held that the action of the brake-man in pursuing the trespassers and shooting one of them while they were in flight away from the train was not acting within the scope of his employment nor in furtherance of his duty, and hence the com-pany was not liable.

In the early case of *Hudson v. M. K. & T. Rly. Co.*, 16 Kan. 470, where an agent of the company assaulted and beat a person who had

called at the station to transact some business with the agent, it was held that:

"A master is not responsible for the tortious or wrongful acts of his servant when these acts are not directly authorized by him nor done in the course or within the scope of such servant's employment." (Syl. ¶ 1.)

In *Brown v. Railroad Co.*, 11 Kan. 338, 207 Pac. 196, where the rule of the cases mentioned was followed, reference was made to an approved test of liability of a master for the torts of a servant. It was said, quoting from. Wood's Master and Servant, 2d ed., § 307:

"The simple test is, whether they were acts within the scope of his employment; not whether they were done while prosecuting the master's business; but, whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him." (p. 341. See, also, *Roebuck v. Railway Co.*, 99 Kan. 544, 162 Pac. 1153.)

In view of the findings that the tortious act was not done in furtherance of any duty of the brakemen to the defendant, but was done by them with personal malice and intent to kill plaintiff, no liability of the defendant was established, as special findings control the general verdict, the result is that the verdict must be set aside and judgment entered in favor of the defendant.