## JOSEPH SACHROWITZ v. THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY.

WRONGFUL ACTS — *Railroad Company, not Responsible.* Where it appears that the plaintiff, while standing upon the platform of one of the cars of a train, which he was about to enter as a passenger, was knocked off and robbed just as the train started, by a person holding a lantern in one hand and a club in the other; and where it does not appear that the person committing the assault and robbery was an employé of the railroad company, otherwise than that he carried a lantern with letters on it, and wore a cap with a badge upon it; and where it does not appear that the assault was made in ejecting, or attempting to eject, the plaintiff from the cars by any one connected with the operation of the train, or having any charge of the depot, its grounds, or the road; and where it further appears that the alleged assault was wholly disconnected from any service in which any employé of the railroad company was engaged in: *Held,* That the railroad company operating the train is not responsible for the wrongful acts committed upon the plaintiff, under a petition charging that the plaintiff was assaulted and injured by the servants and employés operating and controlling a train of the company.

*Error from Reno District Court.*

ACTION brought by *Joseph Sachrowitz* against *The Railroad Company,* to recover damages for bodily injuries. Trial at the May Term, 1885, and judgment for the defendant. The plaintiff brings the case here. The opinion states the material facts.

*W. T. Buckner,* for plaintiff in error.

*Geo. R. Peck, A. A. Hurd,* and *C. N. Sterry,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This action was brought by the plaintiff in error to recover damages for personal injuries, which he alleges he sustained through the conduct of one of the servants or agents of the defendant in error. The defendant in his answer averred that the plaintiff sustained his injuries in attempting

to climb upon a freight car while in motion, with the intention of riding on the car without paying any fare. On the trial, the plaintiff gave evidence tending to show that he is a Hebrew, and had been living in the United States only about two years; that just previous to his injuries he had started to go from Pueblo to Kansas City, and had purchased a ticket to be transported from Pueblo to Kansas City over defendant's road; that he had a gripsack containing his personal effects, which he shipped by express to Kansas City, not wishing to be bothered with it on the cars; that when he had reached a point between Hutchinson and Burrton the conductor put him off the train he was riding on because he had either lost the pasteboard given him by a former conductor, or that conductor had taken it up; that when he was put off the train he had about five dollars in money; that he walked on to Burrton, reaching there shortly after noon; that while at Burrton he met a young man with whom he could talk a little, as this young man could talk German; that he gave this young man a half-dollar in exchange for a cigar case, and then walked around with him until towards evening, when they went into a private house and got a meal; that after this he left the young man and walked south of town some distance, and while he was there the regular passenger train going east passed through Burrton; that shortly after ten o'clock he came back toward the depot, and as he came, he saw the emigrant train standing there, and he then concluded to purchase a ticket to go to Newton upon it; that he thereafter attempted to cross over the cars to the platform and to the station, which was on the other side, but as he got upon the platform of one of the cars, the cars started, and he gave up his attempt to get to the depot; that just as the cars started, a man having a lantern with letters upon it, and a cap with a badge on it, holding the lantern in one hand and a club in the other, jumped upon the same platform, and struck the plaintiff with both the club and the lantern, or with one, on the head, knocking him senseless on the ground; that plaintiff never saw the man before; that he had no words with him at

the time, the only thing said by either preceding the blows being the words, "You God-damned son of a bitch!" uttered by the man who struck him; that plaintiff at the time could neither write, speak, nor understand English, and did not and does not know what the letters were which were on the lantern, or the badge on this man's cap; that he thought this man was a railroad man because he had a lantern with letters on it, and a cap with a badge on it; that that was the only reason for saying or believing that he was a railroad man; that after plaintiff had lain where he fell for two or three minutes, this same man came running towards him and told him to get up, but plaintiff could not; that he seized the plaintiff, and raising him up with one hand, went through his pockets with the other; that as he did so, another man came running towards them, and as this man came, the one who had hold of him dropped him and ran off towards the town, away from the direction in which the train was; that this other man coming up, an alarm was given, and the citizens came and carried him to Dr. McAtee's office, where the doctor and his brother dressed his arm and set the bones; that the next morning Dr. Smalt, who was in the employ of the defendant, came and examined the arm and the dressing, and stated that it was all right; that afterwards his arm had to be amputated because of the unskillful and negligent manner in which it was set.

The defendant gave evidence tending to show that between ten and eleven o'clock on the night of June 26th, 1882, a train called "emigrant train," consisting of an engine, freight and emigrant passenger cars, arrived at Burrton on its way east, and stopped there so that the engine could take water at the tank; that as the rear of the train passed the depot, the conductor, hearing some one hallooing as though he was hurt, caused the train to be stopped, and with the brakeman went to the spot where the noise proceeded from, and found two men, dressed and looking like tramps; one of them was lying on the ground, apparently hurt and in pain, and the other was holding this man's head up and crying; that the one who was not hurt, upon inquiry as to what was the mat-

ter, stated in substance that he and the injured man, whom he called "Joe" and "partner," had been beating their way from Denver east, stealing rides when they could on the cars, and that they had been put off a train early that morning at Burrton, and that they had watched every opportunity to get upon this train, and started to climb up the side of one of the freight cars on the ladder after the train had started, and that the man who was hurt was clumsy and awkward about such business; that as he reached the top he fell and struck the ground, and severely hurt himself; that the conductor dispatched the man who was not hurt in search of a doctor, and soon a doctor arrived with some of the citizens of the town, and the man was carried to the doctor's office, where it was found that his arm was badly broken; that after a while this arm was set, and the plaintiff was left in the doctor's office that night in care of the man who was with him; that afterward it was ascertained the arm had not been properly set, and that amputation was necessary in order to save the plaintiff's life, and therefore his arm was amputated; that when the plaintiff was taken to the doctor's office, the city marshal, who was present, searched his pockets for such valuables as he might have, for the purpose of keeping them for him, but discovered nothing except a loaded revolver.

The case was submitted to the court with a jury, and the jury returned a verdict in favor of the defendant. The court subsequently approved the verdict, and rendered judgment accordingly. The plaintiff in his proceeding in error alleges that the district court improperly received upon the trial the declarations of a person known as "Cooney," who claimed to be the "partner" of the plaintiff, as to the manner of his receiving his injuries. Exceptions were also taken to certain instructions.

A careful examination of the record convinces us that the court below could not have committed any error prejudicial to the rights of the plaintiff. After the plaintiff had produced all of his evidence, the defendant demurred thereto, and the court overruled the demurrer. Thereupon, the defendant in-

troduced the evidence heretofore recited, tending to show that the plaintiff was accidentally injured while endeavoring to climb up the side of a car in motion, with the intention of stealing a ride thereon. The plaintiff did not show upon the trial that the person whom he alleges knocked him down and robbed him, was the servant or agent of the defendant; but even if we assume that because the man who assaulted him had a lantern in his hand with letters on it and wore a cap with a badge, that therefore he was an employé of the defendant, it does not follow that he was acting in the course of his employment in making the assault. It is not claimed that he was employed directly to make the assault; it does not appear that he had charge of the train or of the car upon which the plaintiff was standing when he claims he was knocked off. The plaintiff testified that the person who struck and robbed him did not run towards the train after he had got his money, but ran the other way; that he went down town. The evidence of the plaintiff is insufficient in not showing that the person who assaulted him was in the employ of the defendant; even if we concede he has shown that much, yet his evidence is fatally defective in not showing that the wrongful acts alleged were done by the servant or agent of the defendant in the course or within the scope of his employment. (*Hudson v. M. K. & T. Rly. Co.*, 16 Kas. 470.) This action was not brought against the defendant for its negligence in not protecting the plaintiff while a passenger on its train from the assault of some third party; and it nowhere appears in the evidence that he was thrown from the train by any person connected in any way with its operation.

The evidence offered by the defendant, after the demurrer was overruled, did not supply the omissions in the plaintiff's case. Upon the evidence of the plaintiff, the trial court would have been justified in withdrawing the case from the consideration of the jury, and deciding it in favor of the defendant. After all the evidence had been presented on both sides, the court would have been justified in instructing the jury to ren-

Assault and bat-
tery; railroad
company, not
responsible. der a verdict for the defendant. As there is no evidence in the record tending to show that the assault and robbery grew out of any service in which any employé of the defendant was engaged, or that was in the line of duty of any employé of the defendant, but appears to have been clearly disconnected therefrom, the judgment rendered is the only one that the evidence will support.

Under these circumstances, it is unnecessary to discuss the various alleged errors presented in the brief of plaintiff.

The judgment of the district court will be affirmed.

All the Justices concurring.