## WILLIAM GRAYSON, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

### St. Louis Court of Appeals, February 17, 1903.

1. **Action for Damages: COMMON CARRIER: GROUND: INSULT-ING LANGUAGE: MENTAL PAIN, DAMAGES THEREFOR.** There can be no recovery of damages in Missouri for mental pain and anguish, disconnected with bodily injury.

2. ——: ——: ——. There can only be a recovery of damages for mental pain when occasioned by bodily injury.

3. ——: ——: ——: **PETITION: NO CAUSE OF ACTION.** A petition seeking to recover damages on account of mere words, however insulting, not incident to some personal injury, does not state a cause of action, and such petition would therefore be subject to an objection against the introduction of any testimony in support of it.

4. ——: ——: **ACTION FOR MALICIOUS PROSECUTION.** Where the conductor of a street car orders the arrest of a passenger before he leaves the car and while yet under the protection of such conductor, and such passenger is thereby arrested, and in order to regain his liberty is compelled to give an appearance bond, and on a hearing of the charge against him is discharged, he may bring a suit against the company for which such conductor was working, and recover damages for such malicious arrest.

5. ——: ——: ——: **REASONABLE DAMAGES.** The plaintiff was entitled to recover against the company a reasonable sum for damages, actual and punitive, occasioned by the arrest directed by the conductor, while within the scope of his employment.

Appeal from St. Louis City Circuit Court.—*Hon. S. P. Spencer*, Judge.

AFFIRMED SI.

### STATEMENT.

Omitting caption and signature, the petition is as follows:

"Plaintiff states that the defendant is now and was at the times hereinafter mentioned a corporation

duly incorporated under the laws of the State of Missouri, and as such engaged in the carrying of passengers for hire in the city of St. Louis; that on the twenty-first day of June the plaintiff was a passenger on one of defendant's cars on Grand avenue in said city, and with him and under his charge was his son, who was at the time nine years of age, and who was also a passenger on said car, and upon which car at the time was a number of other passengers; that under the law and ordinances of said city the fare to be charged by the defendant for passengers was five cents for passengers twelve years of age or over, and one-half that amount for passengers under twelve years of age; that plaintiff gave to the conductor of said car, at the time a servant of the defendant and in charge of said car, ten cents in payment of his own fare and that of his son, and requested the said conductor to give to the plaintiff a one-half fare ticket on account of the surplus fare, to-wit: two and one-half cents paid as aforesaid by plaintiff on account of the fare for his said son, whereupon the said conductor asked the plaintiff how old his son was, to which inquiry the plaintiff replied that he was nine years of age, whereupon the said conductor, in the presence and hearing of other passengers on said car, answered the plaintiff and said, 'You can't give me a "stiff" like that. He is fourteen years old,' thereby charging the plaintiff with lying in the presence and hearing of the other passengers and to the plaintiff's great shame and mortification and to his damage in the sum of one thousand dollars for which amount he asks judgment against the defendant and his costs.

"And for further cause of action plaintiff says, the defendant being a corporation and carrier of passengers as aforesaid, that while he was a passenger on said car as aforesaid, with his said minor son, the said conductor of said car, in violation of the rights of the plaintiff and in the presence of other passengers thereon, did, without cause, cause plaintiff to be ar-

rested by a police officer of said city and to be taken under arrest by him to the police station of said city, where the plaintiff was required to give bond for his appearance the next day thereafter to answer to the charge made against him by said police officer at the instance of said conductor; and on the next day, to-wit, the twenty-second day of June, 1900, in accordance with said bond given, plaintiff was compelled to appear and did appear at said police court, and was there arraigned and prosecuted upon said charge so made as aforesaid by said officer, and said conductor did then and there appear as a witness in said prosecution of the plaintiff. Plaintiff further says that upon the hearing of the evidence in said cause the plaintiff was at once discharged by the judge of said court, and plaintiff says his said arrest and prosecution was without any just cause, and was an outrage on the rights of the plaintiff, and was malicious on the part of said conductor, and caused the plaintiff great shame and mortification and pain and injury to his feelings and mental anguish, and to his damage in the sum of five thousand dollars actual damages for which he asks judgment; and also by reason of the premises he asks punitive damages in the sum of five thousand dollars against the defendant and his costs.''

The answer was a general denial.

Appellant moved the court to require respondent to elect upon which of the two counts he would proceed to trial, on the ground that the ''first count is analogous to slander and the other to a malicious and false arrest, and that it does not appear upon the proceedings that the two counts arose out of the same transaction.'' The motion was overruled and the case proceeded to trial upon both counts. At the hearing appellant offered the following objection to any evidence under both counts of the petition, to-wit:

''I further object to the introduction of any evidence under the first count of the petition, because it

does not allege or show, nor do the words of the colloquium impute to the plaintiff, the commission of any crime, without which words are only actionable when special damages are alleged; because it is not alleged that the words spoken by the conductor were false; because the petition contains no allegation of the sense in which the word 'stiff' was used and understood—the transaction amounting to nothing more than an affirmation on one side and a disaffirmation on the other. Again, because mere shame and mortification, unaccompanied by physical injuries, do not constitute a cause of action, being only mental anguish. . . .

"I wish further to object to the introduction of any evidence under the second count of the petition, for the reason that it is not alleged therein that the defendant authorized the plaintiff's arrest, and for further reason that it is not alleged that the conductor was acting within the scope of his authority in making the arrest or causing the arrest to be made; because it is not alleged that the defendant had any connection whatever with procuring the plaintiff's arrest; because the act and malice charged are alleged to be the act and malice of the conductor, and not the act and malice of the defendant; because it is not alleged or shown what the offense was for which the plaintiff was arrested."

The evidence is that plaintiff is fifty-seven years old and resides at No. 1115 South Grand avenue, city of St. Louis, with his family consisting of four boys and one girl. On June 21, 1900, his youngest boy was nine years old and on that day with this boy he boarded one of defendant's cars at Chouteau and Grand avenues for the purpose of going north on Grand avenue to Market street and there taking a down-town car.

In respect to what took place on the car he testified as follows:

"I took the forward seat in the car. There were probably half a dozen passengers in the car, and when the conductor came for the fare I gave him a dime and

asked for two transfers at Market street and a half-fare ticket for the boy. He gave me the transfers and looked at the boy and said, 'That boy is over fourteen.' I laughed and said, 'Why, this is his birthday; he is nine years old to-day, and I am taking him down to buy him a bicycle.' He passed by me and said, 'You can't give me that stiff,' and went on to the end of the car. I did nothing, but as we neared Market street, when I came to go out, I said, 'I am entitled to a half-fare ticket for this boy.' He said, 'That boy is over fourteen.' I said, 'He is not; he is only nine;' he said, 'Well, I am lying, am I?' I said, 'If you say he is fourteen, you are.' A policeman got on then and I forgot to get off. He says, 'If you don't look out I will put you off the car,' and I said, 'You dare not do that; I will report you to Mr. Baumhoff as soon as I get to the office.' At that time we got to Laclede avenue, and he pushed me in a rough manner and asked the policeman to arrest me. . . .

"He took me by the arm and pushed me off the car, and the policeman had just got off, and he said, 'Arrest that man.'

"The Laclede avenue car was coming along, and I started to take that car and the policeman said, 'Where are you going?' I said, 'To take the car.' He said, 'You are under arrest.' I said, 'You are not arresting me, are you?' He said, 'Yes, sir.' I said, 'What are you going to do with me?' "

He further testified, that he was taken by the police officer to the police station, where a charge of disturbing the peace was lodged against him by the officer and where he was held in custody for a short time; that he was released on his own recognizance to appear at 10 a. m. the next day before the police court to answer the charge; that he appeared as required by his recognizance; that the conductor was present but did not testify; that after he (plaintiff) made his statement to the court he was discharged.

He also testified that his feelings were very much hurt and that he was greatly mortified by the language addressed to him by the conductor when on the car and keenly felt the disgrace of the arrest and having to appear as a defendant in a police court; that he under-stood the conductor when he said, ''You can't give me a stiff like that'' to mean that ''You can't give me a lie like that;'' that the conduct of the conductor was that of a ''tough'' and was very insulting.

On cross-examination he testified that the conductor collected his fare and gave him transfers on Market street; that he went to the rear platform as the car approached Market street intending to get off the car, but neglected to do so and after passing Market street, he asked the conductor for transfers on Laclede avenue which the conductor gave him. When the car reached Laclede avenue he was going to get off and while in the act of getting off the conductor took hold of his arm and rudely pushed him from the car, and when he took hold of his arm he said to a police officer, who was on the rear platform, ''Arrest that man.''

The following printed rules of the defendant were read in evidence:

''In case of trouble on a car, call a policeman, when one can be found, and when it becomes necessary to eject a passenger from a car, it must be brought to a full stop, using no more force than is required to remove him from the car. This should never be done except in extreme cases, and then the names of several witnesses should be taken for reference, if necessary.

''A damage report book will be kept in the office of each division, in which conductors and motormen must record all damage to persons or property, giving a clear and full statement and the names of all witnesses obtainable.

''No excuse will be accepted for failure to report even the slightest accident or injury.''

Vol 100 app—5

The defendant offered no evidence.

For the plaintiff the court instructed the jury as follows:

"1.   The court instructs the jury that if the jury believe from the evidence that the plaintiff on or about the twenty-first day of June, 1900, was a passenger on one of defendant's cars, and with him was his son, being under twelve years of age, also a passenger thereon, and the plaintiff paid to the conductor of said car and in charge of it, five cents for the fare of his said son, and demanded of the conductor the return from him of a half-fare ticket for said son, then the court instructs the jury that it was the duty of said conductor to return such ticket, and the plaintiff was justified in insisting on such return, and if the jury believe from the evidence that the conductor did not return such half-fare ticket, but in the presence of other passengers, seized plaintiff and caused plaintiff to be arrested by a police officer (and to be taken under arrest to the police station) and that thereby and as the direct result of said alleged act of the said conductor, the plaintiff suffered shame and mortification, pain and injury to his feelings and mental anguish, then you will find your verdict in favor of the plaintiff on the second count of the petition, and assess his actual damages in such sum as you believe from the evidence will fairly and reasonably compensate him for any damage he sustained thereby; and the court further instructs the jury that if they thus find in favor of the plaintiff on said second count, and the jury further believe from the evidence that the said alleged act of the conductor referred to in this instruction was done in malice toward the plaintiff by him, then the jury may add to such actual damage, if any, so found in favor of plaintiff, an additional sum, as punitive damages, if they think, under all the circumstances of the case, punitive damages ought to be so found by them, and by 'punitive damages' is meant such sum as will be an example to and deter others

from committing such an act, and if the jury find in favor of the plaintiff as to 'punitive damages,' they will so find and the amount thereof separately, and separately so state in their verdict.

"2.   The court instructs the jury that it is the duty of a common carrier of passengers to treat its passengers with respect, and without rudeness, abuse or insult by its employees operating its cars which carry the said passengers, and if the jury believe from the evidence that the plaintiff, on or about the twenty-first day of June, 1900, was a passenger on one of the defendant's cars, and that with him was his son, a minor of the age of nine years, and also a passenger thereon, and the conductor asked the plaintiff how old said son was, and plaintiff told him nine years old, and said conductor replied, in the presence and hearing of other passengers thereon, 'You can't give me a stiff like that.' He is fourteen years old.' and thereby charged the plaintiff with lying, to the plaintiff's shame and mortification, then the jury will on the first count of the petition find their verdict in favor of the plaintiff, and asess his damages in such sum as the jury believe from the evidence will reasonably and fairly compensate the plaintiff for any damage he has sustained thereby.

"3.   The court instructs the jury that by the use of the word 'malice' in these instructions, is meant ill will, or a desire to be revenged, and in passing upon the question of malice, and the other matters referred to in the instructions, the jury should take into consideration all the facts and circumstances, as detailed by the witnesses."

Defendant asked the following instructions, which were refused:

"1.   The court instructs the jury that the plaintiff is not entitled to recover under the first count of his petition.

"2.   The court instructs the jury that under the pleadings and the evidence in this case, the plaintiff

is not entitled to recover upon the second count of his petition.

"3.  The court instructs the jury that the plaintiff is not entitled to recover exemplary damages under the second count of his petition.

"4.  The court instructs the jury that the plaintiff is not entitled to recover any compensatory damages under the second count of his petition."

The jury returned the following verdict:

"We, the jury, find the issues herein joined in favor of the plaintiff upon the first count of the petition herein, and assess the plaintiff's damages on said first count at the sum of $175.

"And we further find for the plaintiff upon the second count of the petition, and we assess plaintiff's actual damages on said second count at the sum of $1,450.

"And we further assess in favor of plaintiff as punitive damages the sum of $375, making a total finding for plaintiff in the sum of $2,000."

Timely motions for new trial and in arrest of judgment were filed which the court overruled and defendant appealed.

*Boyle, Priest & Lehmann, Lon O. Hocker* and *Geo. W. Easley* for appellant.

(1)  The court erred in overruling defendant's objection to the introduction of any evidence under the first count of the petition. The first count does not state a cause of action. It does not allege any other legal injury than that arising from mental anguish, shame and mortification, consequent upon an affirmation by the conductor as to the age of the boy, different from the affirmation made by the plaintiff on that subject. The rule seems well settled in this State that there can be no recovery for mental anguish or shame, unless it is attendant upon or incident to some other legal injury. Trigg v. Railroad, 74 Mo. 147; Snyder v.

Railroad, 85 Mo. 495; Connell v. Tel. Co., 116 Mo. 34; Strange v. Railroad, 61 Mo. App. 587; Barnett v. Railroad, 75 Mo. 446; Deeming v. Railroad, 80 Mo. App. 158; Mitchell v. Railroad, 45 N. E. 354; Ewing v. Railroad, 147 Pa. St. 40; 23 Atl. 340; Woods Mayne on Dam., p. 74, note; Pierce on Railroad, 302; 52 Central Law Journal, pp. 338, 410. (2) This count can not be upheld on the ground that it charges that plaintiff was charged with lying. Such language is not actionable *per se,* and special damages must be alleged to state a cause of action. Palmer v. Hunter, 8 Mo. 512; Connell v. Tel. Co., 116 Mo. 45.

*Smith P. Galt* for respondent.

(1) A passenger on a railway car must not only be carried with safety, but must be treated with courtesy and respect; and if assaulted or insulted by the conductor, the railway company is liable to him for damages for the shame and mortification, mental anguish and injured feelings caused thereby, whether his act is authorized or ratified by the company or not. The conductor is *pro hac vice* the corporation itself. Trigg v. Railroad, 74 Mo. 147; Farber v. Railroad, 116 Mo. 91; Maleck v. Railroad, 57 Mo. 17; Deming v. Railroad, 80 Mo. App. 158; Gillette v. Railroad, 55 Mo. 315; Perkins v. Railroad, 55 Mo. 201; Doss v. Railroad, 59 Mo. 33; Graham v. Railroad, 66 Mo. 541; Eads v. Railroad, 43 Mo. App. 536; Canfield v. Railroad, 59 Mo. App. 354.; Boogher v. Life Association of America, 75 Mo. 317, overruling Gillette v. Railroad, 55 Mo. 315 (cited by appellant), in so far as it would have supported appellant's contention. (2) Not only is the corporation liable for the direct damages resulting from the tortious act, but is liable also for punitive damages for the willful wrong, as a warning to others and itself. Maleck v. Railroad, 57 Mo. 17; Gillette v. Railroad, 55 Mo. 315; Perkins v. Railroad, 55 Mo. 201; Graham v. Railroad, 66 Mo. 541; Canfield v. Railroad, 59 Mo. App. 366.

(3)   The company is liable for the willful, tortious acts of a conductor towards its passengers, whether of insult or assault, for the law places upon it the obligation to carry him not only safely, but with civility and respect.   Farber v. Railroad, 116 Mo. 91; Spohn v. Railroad, 87 Mo. 74.   (4)   A railway company is also liable in punitive damages for the willful, malicious and wrongful act of its conductor, committed upon a passenger in his charge.   "The rule which is in accord with reason and the weight of authority, is that passenger carriers, although corporations, may be liable, in exemplary damages, for injuries caused by their agents, without a direct authorization, or subsequent ratification, of the act complained of."   Thompson on Carriers of Passengers, p. 575.   See also Pierce on Railroads, p. 305.   In Goddard v. Railroad, 57 Me. 202 et seq., the court says: "Neither guilt, malice nor suffering is predicable of this ideal existence, called a corporation, and yet under cover of its name and authority there is in fact as much wickedness, and as much deserving of punishment, as can be found anywhere else.   And since these ideal existences can neither be hung, imprisoned, whipped or put in the stocks, since in fact no corrective influence can be brought to bear upon them except that of pecuniary loss, it does seem to us that the doctrine of exemplary damages is more beneficial in its application to them, than in its application to natural persons."

BLAND, P. J.—1.   The objection made to the introduction of any evidence on either count of the petition was in the nature of a demurrer to the petition on the ground that it failed to state any cause of action. The first count would authorize a recovery of damages, in an action other than slander, for mental anguish or shame caused by words addressed to the plaintiff unaccompanied by any bodily pain or suffering.

In Farber v. Mo. Pac. R'y Co., 116 Mo. l. c. 91, it is

said the relation of a carrier and passenger "places the carrier under the obligation to carry the passenger safely and properly and treat him respectfully; and holds him responsible for the conduct of his servants, to whom he intrusts the performance of his duty. He is bound to protect his passengers from violence and insults by strangers and co-passengers, and *a fortiori* against the violence and insults of his own servants."

The Farber case was an action for personal injuries to the plaintiff caused by his being forcibly ejected from a train by a brakeman.

In Eads v. The Metropolitan Street R'y Co., 43 Mo. App. (K. C.) 536, in an action for damages caused by the forcible ejectment of plaintiff from a street car by the conductor, substantially the same language is used as in the Farber case.

Numerous authorities might be cited in support of the doctrine that a carrier of passengers is bound to treat its passengers with decorum and respect and to protect them from the insults and assaults of strangers and co-passengers, if it is necessary, but this duty is so obvious and necessary that it needs no judicial authority to sanction it. It is a general rule of law that if damages ensue for a violation of duty, the party injured may have an action to recover his damages, but the law does not give damages for every injury, nor does every wrong subject the wrongdoer to a pecuniary penalty.

In Trigg v. The St. L., K. C. & N. R'y Co., 74 Mo. l. c. 153, the court said: "The general rule is that 'pain of mind, when connected with bodily injury, is the subject of damages; but it must be so connected in order to be included in the estimate, unless the injury is accompanied by circumstances of malice, insult or inhumanity;'" that is, pain of mind will be the subject of damages when caused by bodily injury itself, and also when the bodily injury does not in itself cause pain of mind, but was inflicted under circumstances which manifested malice or inhumanity or was accompanied

by insult. We have been cited to no case in this State, nor have we been able to find one, where it has been held that mere words unaccompanied by any bodily injury, not incident to such injury, was held the subject of damages, except in actions of libel and slander; on the contrary it has been repeatedly held that a recovery of damages in such circumstances can not be had. Spohn v. Mo. Pac. R'y Co., 116 Mo. l. c. 632, 633; Connell v. The Western Union Tel. Co., 116 Mo. l. c. 46-7; Deming v. C., R. I. & P. R'y Co., 80 Mo. App. (K. C.) 152; State v. Workman, 75 Mo. App. (St. L.) 454.

We conclude that the first count of the petition does not state a cause of action and the objection to the introduction of any testimony on that count should have been sustained.

2. The second count of the petition is defective in that it fails to allege that the conductor had authority from defendant, as its agent, to cause the arrest of the plaintiff, but we do not think that it is fatally defective for this reason. The conductor had charge of the car and full control of it for the time and represented the defendant in the fullest sense, as to any and every matter connected with its management and control, and it being his duty to protect passengers from insult and injury it can not be said, as a matter of law, that in the discharge of this duty he had no authority to call an officer and cause the arrest of a passenger when necessary to preserve the peace on board the car and to protect his passengers from insults and injury. On the contrary it seems to us that if a passenger should be guilty of a flagrant breach of the peace, to the annoyance and disturbance of his co-passengers, the conductor would have the right and it would be his duty to cause his arrest by an officer, if one was by to make it. It is true he is not a conservator of the peace, yet it is his bounden duty to preserve the peace on his car and to prevent insult and injury to the passengers and if, to discharge this duty, it should become necessary to call a

policeman we are satisfied that he should do so, and that to do so is within the scope of his employment, and conclude that the second count is sufficient after verdict.

The evidence is that under a rule of the company the conductor did have authority to call a policeman— to call a policeman generally signifies that an arrest is to be made—and we think that both from necessity and under the company's rules it was within the scope of his authority to cause the arrest of any passenger when necessary to preserve the peace and to protect other passengers. After the relation of passenger ceased, of course the authority of the conductor to cause his arrest ceased and an arrest caused by him after the passenger had left the car would not be the act of the company but the act of the conductor for which he and not the company would be liable.

The evidence further is that while plaintiff was in the act of descending from the car for the purpose of taking another car on Laclede avenue, he was pushed off by the conductor, who at the same moment said to the policeman standing by, "Arrest that man," and that plaintiff was followed by the policeman and arrested in the street. A police officer, of the city of St. Louis, who has reasonable and probable cause to suspect the person arrested guilty of the commission of an offense, may lawfully arrest the offender without warrant [State v. Hancock, 73 Mo. App. (St. L.) 19] and may therefore arrest upon the information of a third party, if the information is such as to furnish reasonable grounds and probable cause to believe that the person accused has committed an offense. While the evidence shows that the conductor made no formal charge against plaintiff upon which the officer made the arrest, it does show that the officer was present when the altercation took place between the plaintiff and the conductor on the rear platform of the car and that he followed the plaintiff into the street and made the arrest at the request of the conductor. The plaintiff had not quit the car when the con-

ductor ordered his arrest, but was in the act of alighting from the car, and his testimony is that the order for his arrest was simultaneous with his being pushed from the car by the conductor.

The order for his arrest was before he quit the car and while he was yet under the protection of the conductor and at a time when it was the duty of that employee to treat him with respect and to protect him from injury and insult. The order for the arrest was therefore given by the conductor while he was about the business of the company and was within the scope of his authority, though in abuse of it. After his arrest the plaintiff was taken a prisoner to a police station by the officer who made the arrest. To regain his liberty he was compelled to enter into a recognizance for his appearance on the following day before a police justice to answer the charge of having disturbed the peace. In obedience to his recognizance he did appear, but no one appeared to prosecute him. After hearing his statement and the evidence of the police officer, who arrested him, the justice discharged him, and here the chapter of humiliation ended.

The evidence tends to show the commission of a malicious tort against the plaintiff by the appellant through its agent, the conductor, acting within the scope of his employment. For such an act a corporation is liable to the same extent as an individual. Travers v. Kansas Pacific R'y, 63 Mo. 421; Hicks v. The Hannibal & St. J. R. R. Co., 68 Mo. 329; Haehl v. The Wabash R'y Co., 119 Mo. l. c. 342; Canfield v. The C., R. I. & P. R'y Co., 59 Mo. App. 354; McGinniss v. Mo. Pac. R'y. Co., 21 Mo. App. 399; Atlanta and West Point R. R. v. Condor, 75 Ga. 51; Quinn v. South Carolina R. Co., 1 L. R. A. 682; L. & N. R. R. v. Whitman, 79 Ala. 328; Sachrowitz v. A. T. & S. F. R. R. Co., 37 Kas. 212; Forsee v. Ala. G. S. R. R. Co., 63 Miss. 66.

3. For the reason that the first count of the peti-

tion fails to state any cause of action the judgment on that count is reversed.

4. The recovery of $1,450, as actual damages on the second count is, in the opinion of the court, excessive. Five hundred dollars would be adequate compensation for all the injury sustained. Wherefore it is considered that unless the plaintiff, within ten days, files with the clerk of this court his remittitur of $950, the judgment will be reversed and the cause remanded. If the remittitur be filed within the time herein allowed, the judgment on the second count will stand affirmed for $500 actual damages and $375 punitive damages. Judge *Goode* concurs; Judge *Reyburn* not sitting.